GEORGE R. STEVENS AND JOHN YOUNG, Respondents, *v.* JOHN B. McKAY AND JOHN S. HOOD, Appellants.

*Contract—Delivery and Acceptance of Goods.*—Where a party knowingly accepts of goods of an inferior quality delivered in pursuance of a contract, he cannot afterwards object to the quality of such goods.

*Appeal from St. Louis Circuit Court.*

The plaintiffs brought suit for $359.80 on an agreement in writing, which read as follows:

" We, the undersigned, agree to receive from Messrs. Stevens & Young about five hundred (500) barrels *selected* jeniton apples, at Quincy, at two dollars and five cents ($2.05) per bbl., at their cellar. Also, about one hundred barrels, same kind, at Clarksville, Mo., at one dollar and seventy-five cents ($1.75) per bbl. Clarksville, March 13, 1862. McKay & Hood."

The defendants' counterpart of the same contract is this:

" We, the undersigned, agree to furnish Messrs. Mc'Kay & Hood about five hundred (500) barrels apples at Quincy, Illinois, at two dollars and five cents per barrel, at their cellar; also, about one hundred bbls. at Clarksville, Mo., at one $\frac{75}{100}$ dollars ($1.75). *All the above to be put in good, sound, merchantable order, and jenitons.* Clarksville, March 13, 1862. John Young. G. R. Stevens."

At plaintiffs' instance, the court instructed the jury as follows:

1. In the sale of personal property, the presumption of law is that the article sold is to be paid for on delivery unless there be an agreement for credit.

2. If the jury believe from the evidence that the apples in question became spoiled from any cause arising after their delivery to defendants or their agent, or in consequence of the negligence of defendants or their agent, then the unsound or unmerchantable condition of the apples (if such

were their condition) constitutes no defence to the plaintiffs' right of recovery in this action.

3. Even though the jury should believe that the apples in question were defective in quality at the time of their delivery, or were so badly barrelled as to become spoilt in consequence thereof, yet if they also believe that the agent of defendants knew their deficiency in quality (if such there were) and the condition in which they were packed, and, notwithstanding such knowledge, accepted said apples, then the defendants have thereby waived all right of future objection on those grounds, and cannot now avail themselves thereof as a matter of defence to this action.

4. Even though the jury should believe that plaintiffs warranted the apples in question to be sound and merchantable, and further believe that said apples at the time of their delivery to the defendants, or their agent, at plaintiffs' cellar in Quincy, were sound and merchantable, then the subsequent condition of said apples constitutes no defence to the plaintiffs' right of recovery.

5. It is a question for the jury to determine which of the two papers read in evidence, and purporting to be the contract between the parties, is in point of fact the contract between them; and if the jury find that the paper read by plantiffs embodies the entire contract between the parties, the jury are instructed that the same is not in law necessarily a warranty of the apples.

The defendant excepted to the giving of these instructions for plaintiffs, and asked the court to instruct as follows, which the court did:

1. On the counter-claim of defendants against the plaintiffs, the jury are instructed that they can under the evidence find in favor of the defendants what damages they may have sustained (if any) by reason of the failure of plaintiffs to furnish a sound and merchantable article of apples under the contract (if such was the contract), and there was a failure to furnish such apples.

2. If the jury believe and find from the evidence that the

contract given in evidence by the defendants is a counterpart of the same contract given in evidence by the plaintiffs and was executed by the plaintiffs, and that it was under this contract that the apples were furnished by plaintiffs, then by the terms of said contract the said apples, when to be delivered, were to be put, in a good, sound and merchantable condition.

3. If the jury believe and find from the evidence that the apples (if any) furnished under said named contract were not, when furnished, put in a good, sound and merchantable order, then the plaintiffs cannot recover the contract price therefor.

4. The court instructs the jury that the word "selected" may imply a warranty of the apples, if such was the intention of the parties to the contract. The word "warrant" need not be used, nor any other of precisely the same meaning; it is enough if the word or words actually used import an undertaking on the part of the vendor that the chattel is sound and merchantable, or an equivalent to such an undertaking.

[For No. 5, see opinion.]

6. If the jury believe and find from the evidence that by the terms of the contract made and entered into by them, the plaintiffs agreed to furnish apples, and put the same in good, sound and merchantable order for the defendants, but failed to do so, they cannot then recover the contract price therefor, or more than the property is shown to have been reasonably worth.

7. If the jury find from the evidence that the apples referred to were of a bad, unsound and unmerchantable quality, then the plaintiffs cannot recover the contract price therefor, but only what such apples are shown to have been worth; and if the jury find that the defendants have paid on account of said apples more than they were worth, then the jury will find in favor of the defendants on their counter-claim against the plaintiffs to the extent of such over-payment, and interest thereon from the commencement of this suit.

FAGG, Judge, delivered the opinion of the court.

The counsel for the appellants really insists upon only two grounds for the reversal of the judgment in this case. The first is that the court gave inconsistent and conflicting instructions; and second, that the third instruction given for the plaintiffs was not warranted by the evidence. An examination of these two points will not require an extended statement of the case.

It seems to have been a suit instituted in the Circuit Court of St. Louis county to recover of defendants a balance of three hundred and fifty-nine and $\frac{99}{100}$ dollars, alleged to be due and owing to the plaintiffs upon a contract for the sale and delivery of a certain number of barrels of apples at the city of Quincy, Illinois, and also at Clarksville, Mo. The verdict and judgment was for the amount claimed, and the defendants bring the suit here by appeal.

The court gave all the instructions asked for by both parties, and the inconsistency complained of is alleged to exist in plaintiffs' fifth instruction and the one of the same number asked by defendants.

A memorandum of the contract signed by the defendants was declared upon and fully set out in the petition. The defendants set up in their answer and produced on the trial a counterpart of the same, the two differing somewhat in phraseology. This difference between the two instruments, it is claimed, was not harmonized by the instructions. It is insisted that the two taken together are so inconsistent and conflicting as to destroy each other, and to leave the jury without any judicial construction of the contract between the parties.

It was certainly improper to leave it to the jury to find as a fact in the case, which of the two instruments contained the entire contract between the parties; and if the instruction of the plaintiffs stood alone upon that point, we should have no hesitation in declaring it to be erroneous.

But the instruction given at the instance of the defendants furnishes a sufficient solution of the difficulty, by defining

the meaning of the word "*selected*" as used in the instrument set out in the petition, so as to make it harmonize with the condition and quality of the apples as called for by the terms of the instrument introduced by the defendants, and relied upon as the contract. The first described the fruit to be delivered as "selected jeniton apples"; the second, after stating the number of barrels to be delivered at the two points respectively, says they are "to be put in good, sound, merchantable order, and jenitons." We conclude, therefore, that defendants' instruction, to a certain extent, corrected the error committed by the one given for plaintiff. It is as follows:

"5. The word 'selected,' as used in the contract, does not mean merely that the article of apples was to be chosen out or set apart, but that they were to be selected with reference to their being of merchantable value and proper subjects of trade."

This was a judicial determination of what constituted the entire contract between the parties, and the construction of the two instruments thus taken together placed the question before the jury in a light as favorable as the defendants could have desired.

The next point of objection is the third in the series of instructions given for plaintiffs. It is predicated upon the idea that there was evidence in the cause tending to show a delivery of the apples at Quincy; and if so delivered and accepted by the defendants or their agents, then all inquiry as to the actual condition of the fruit at that time was precluded by such delivery and acceptance. We think that the instruction was warranted by the evidence preserved in the record, and, as these were facts for the jury, and passed upon without misdirection by the court, the finding must be taken to be conclusive.

Upon a view of the whole case as presented by the record we find no errors sufficient to require a reversal of the judgment, and it must therefore be affirmed. The other judges concur.