## GRAFF v. FOSTER et al., Appellants.

1. **Delivery to Carrier, Constructive Delivery to Consignee:** DAMAGE TO GOODS IN TRANSIT: ACCEPTANCE AND WAIVER. The rule that delivery to the usual carrier, with proper instructions, is to be considered delivery to a consignee who has ordered goods from a distance, without giving special directions as to shipment, is applicable to a case where the goods shipped are not all of the particular grade ordered, if they have been received by the consignee with knowledge of the fact and without objection. In such a case, in the absence of any warranty by the consignor, he is not liable for damage to the goods occurring while they are in the hands of the carrier. Acceptance of the goods, with knowledge that they are damaged, is to be taken as a waiver of all objections on that score.

2. **Warranty of Quality:** SALE BY SAMPLE. In order to constitute a warranty of the quality of goods, it is not necessary that the word "warranty" shall be used. It is sufficient if the words used signify an undertaking, on the part of the seller, that the goods sold are what they are represented to be. So, if the seller exhibits samples as a fair specimen, and agrees to deliver goods equal in quality to the samples, and the purchaser buys, relying on this promise, there is a warranty.

3. **Statute of Frauds:** PLEADING. The statute of frauds is not available as a defense to an action for goods sold and delivered, either where the answer admits the delivery or where it fails to plead the statute as a defense.

Graff v. Foster.

*Appeal from Buchanan Circuit Court.*—Hon. Jos. P. Grubb, Judge.

The following are instructions Nos. 3, 4 and 5 offered by defendant and refused by the court:

3rd. If the jury believe from the evidence in this case, that the defendants ordered of plaintiffs, on or about the time stated in the answer to the first count of the petition, twenty-one cases of Valencia oranges, to be shipped to defendants, for which no price was mentioned, but that plaintiffs, instead of sending to defendants the quality or quantity ordered, sent a less quantity of the kind ordered and others of a different kind, then defendants are not liable to plaintiffs for the oranges so sent by plaintiffs, unless defendants received said oranges without objection or appropriated them to their own use; and even then defendants are not liable for any greater sum than said oranges were worth at the time and in the condition in which they were so received or appropriated by defendants.

4th. If the jury believe, from the evidence, that defendants have paid plaintiffs for the oranges sent to defendants by plaintiffs on or about the 7th day of February, 1873, the market value of said oranges at the time they were received and accepted by defendants, then they will find for defendants on the first count of the petition.

5th. Although the jury may believe, from the evidence in this case, that defendants, on or about February 7th, 1873, ordered a certain quantity of oranges of a certain kind to be sent to defendants ; yet, if the jury also believe, from the evidence, that, instead of sending to the defendants the quantity and kind of oranges so ordered, plaintiffs sent a less quantity of the kind ordered and also a number of cases of oranges of a kind not ordered by defendants, then defendants are not liable for said oranges by virtue or in consequence of said order ; but the oranges so sent were sent at plaintiffs' risk of freezing or injury before the

same were received and the modification of such order was assented to by defendants; and defendants are only liable to plaintiffs for the market value of the oranges so received and accepted at the place to which they were consigned and at which they were accepted.

*W. H. Sherman* for appellant.

1. The fruit shipped, varying materially from the order given, did not become the defendants' property until received and accepted by them, and in order to constitute a final and complete acceptance in this case the assent of defendants should follow, not precede, that of the seller. *Cooke v. Millard*, 65 N. Y. 366. This shipment of fruit was, before final acceptance, at the risk and upon the responsibility of plaintiffs, and the damage the fruit received was plaintiffs' loss. If the fruit was accepted by defendants at St. Joseph the contract must be taken as made at the place where and at the time when the acceptance was complete, and there being no price agreed upon, defendants are only liable for the market value of the fruit at the time and place of its acceptance by defendants. *McIntyre v. Parks*, 3 Met. 207: *Eliason v. Henshaw*, 4 Wheat. 228. Upon these grounds the third, fourth and fifth instructions asked by defendants ought not to have been refused, and plaintiffs' first instruction ought not to have been given.

2. As the fruit actually delivered does not correspond with the warranty or comply with the order given by the purchasers they had a right to rescind the sale by returning, or offering to return within a reasonable time after its delivery to them. *Cooke v. Millard*, 65 N. Y. 366; *Webster v. George*, 78 Ill. 230; *Don v. Fisher*, 1 Cush. 271; *Rogers v. Hanson*, 35 Iowa 286; *Hyatt v. Boyle*, 5 Gill & J. 112; *Franklin v. Long*, 7 Gill & J. 407; *Marston v. Knight*, 29 Me. 341; *Bryant v. Isbaugh*, 13 Gray 607; *Kurtzman v. Weaver*, 20 Pa. St. 422; *Youlk v. Eckert*, 61 Ill. 318.

3. This fruit being of a perishable nature, and plain-

tiffs having refused to accept a return thereof when offered, defendants were justified (even if not required), in law to care for it and dispose of it to the best advantage of plaintiffs. If it was sold within a reasonable time at a fair sale by defendants they are only liable for the proceeds arising from such sale less the necessary expenses incurred in handling and disposing of it. Story on Sales, § 138.

4. The contract was within the operation of the statute of frauds. The sale was never legally consummated. There was no acceptance of the fruit by the defendants. Goods must be received and accepted in order to make such a contract binding upon the vendees. Acceptance and receipt are distinct things, and both are necessary. The acceptance must be an ultimate acceptance such as completely affirms the contract. There may be actual receipt without acceptance and an acceptance without a receipt. Delivery merely without acceptance does not take the case out of the statute. Even where there has been actual receipt and handling of the goods a vendee may, nevertheless, under certain circumstances, return them and renounce the bargain, if no earnest has been paid or note or memorandum made in writing. The receipt by the buyer may be and often is for the purpose of seeing whether he will accept or not. A delivery of goods ordered, to a carrier, without more, is not such a delivery as will take the contract out of the operation of the statute of frauds. In such case there is no acceptance of the goods, actual or symbolical, and they are still subject to every objection as to quality or quantity by the buyer. The most that can be said in such a case is that the delivery to a carrier, considered as an agent of the buyer, is but a receipt, not an acceptance, of the goods. When the order is general, merely directing goods of such a price and quality to be sent and not designating the particular goods, the case will not be taken out of the statute of frauds by proof that such goods were sent, if there is nothing to show acceptance independent of proof of the parol contract; but the case is other-

wise where the goods are fixed upon and the carrier named by the buyer. *Outwater v. Dodge*, 6 Wend. 400; *Cooke v. Millard*, 65 N. Y. 366; *Hewes v. Jordan*, 39 Md. 473; *Rogers v. Hanson*, 35 Iowa 286; *Howard v. Borden*, 13 Allen 300; *Kent v. Huskinson*, 3 Bos. & Pul. 233; *Coombs v. B. & E. R. R. Co.*, 3 Hurl. & Norm. 510.

*Strong & Mosman* for respondents.

The defendants must accept the whole contract, or repudiate it entirely. They say they ordered one thing and plaintiffs sent another of less value—which they received and appropriated as in fulfillment of their request—but will account for it at a rate which is fixed by defendants, without plaintiffs' consent. The answer does not allege notice to plaintiffs of the discrepancy between the order and the fruit received, nor that defendants declined to receive it as filling their order, nor allege notice to plaintiffs that the fruit was subject to their order, nor that it would be sold on plaintiffs' account, nor that it was so sold and account of sales rendered to plaintiffs. If 21 cases of 420's had been shipped, as per order, it will not be denied that the liability of defendants was complete when delivery was made to the carrier at Chicago. This rule needs no citations now. Concede that the shipment differed from the order as to 5 cases, and was correct as to 16 cases. When the goods reached defendants they had the right to refuse them for that reason, but if they received them without objection at the time on that account, they cannot afterwards be heard to urge that objection when sued for the invoice price. *Stevens v. Mackay*, 40 Mo. 224. By the form of their defense to the first count, they cut off recovery by reason of the fact that the goods were different from those ordered, even if it be held that keeping the goods without objection on that ground, was not an acceptance as a virtual or sufficient compliance with their order, because if the goods were not what they ordered,

there was no warranty as to them; if they were such as were ordered, breach of warranty was a good defense. By pleading warranty and breach, they admit they received the goods under the contract. They cannot say that part of the goods were as ordered—others not—abandon the contract; substitute another contract; receive the goods, and recover for breach of the contract repudiated by them. Defendants are " at liberty to accept wholly, or to reject wholly; but one of these things they must do." 1 Pars. Con., (5 Ed.) 477; *Treadwell v. Reynolds*, 39 Conn. 31; *Dutchess Co. v. Harding*, 49 N. Y. 321. If defendants received and appropriated the fruit as in fulfillment of their order, it became their property when delivered to the carrier; 2 Kent Com. 499; *Comstock v. Affælter*, 50 Mo. 411; *Magruder v. Gage*, 33 Md. 344; and if frozen in transit it was their loss. Where perishable goods are sold to be shipped to a distant market, there is no implied warranty that they will continue sound for any definite period. *Mann v. Everton*, 32 Ind. 355.

NORTON, J.—The petition of plaintiffs contains two counts, in the first of which they allege that defendants are indebted to them in the sum of $103.12, balance due on account of goods sold and delivered them on the 7th of February, 1873. It is alleged in the second count that defendants were indebted to plaintiffs in the sum of $690, for goods sold and delivered them on the 19th of May, 1873. Defendants, in their answer to the first count, deny any indebtedness and allege that one Blackman, a traveling salesman for plaintiffs, represented to them, on the 6th of February, 1873, that plaintiffs had in their store, in Chicago, a choice and sound lot of Valencia oranges, graded as " 420's,". which they would sell at a fair price; that, relying on the truth of said representations, defendants, on the 7th of February, telegraphed to plaintiffs at Chicago, Illinois, to send them, to St. Joseph, Mo., twenty-one boxes of Valencia oranges of the grade of " 420's;" that plain-

tiff did not send the fruit ordered, but sent defendants twenty-one boxes of an 'inferior grade, which, when they reached defendants at St. Joseph, were unsound, frozen, rotten and decayed; that they paid to plaintiffs, on the 7th of May, 1873, all that said fruit was reasonably worth. Defendants, after denying generally the second count, allege that, on the 19th of May, 1873, plaintiffs, who were doing business in Chicago, then and there exhibited to one of the defendants, a partner of the other defendants, engaged in business at St. Joseph, Mo., certain samples of two grades of oranges of good quality and in sound condition; that plaintiffs represented and warranted that said samples were fair specimens of the plaintiffs' fruit which they then and there offered for sale; that defendants agreed to purchase some of said fruit if plaintiffs would deliver them fruit like said samples; that defendants, relying on said representations, purchased one hundred boxes of said fruit, at $4.25 per box, and forty boxes of another kind at $6.50 per box, which were to be shipped and delivered to defendants at St. Joseph. That said fruit, when it reached St. Joseph, did not equal said samples in quality or condition, and were so rotten and injured that the whole shipment was worth only $50; that said oranges, if equal to the sample, were worth, at St. Joseph, $8 per box for one grade, and $10 per box for the other; that defendants soon after offered to return said oranges to said plaintiffs, which they refused, whereupon defendants, within a reasonable time, sold said fruit for the best attainable price, which was $50; that they expended in re-assorting the oranges fifty dollars, and they ask judgment for $1,200 damages. The answer was denied by replication, and, a trial being had, resulted in a verdict and judgment for plaintiffs on both counts of the petition, from which defendants have appealed to this court.

Exceptions were taken, during the trial, to various rulings of the court in admitting and rejecting evidence and

1. DELIVERY TO CARRIER, CONSTRUCTIVE DELIVERY TO CONSIGNEE: damage to goods in transit: acceptance and waiver. in giving and refusing instructions, and which we are asked to review. The court, in its first instruction given for plaintiffs and excepted to, directed the jury that, under the pleadings and evidence, they would find for plaintiffs on their first count. The only real defense set up to the cause of action, contained in this court, was that one Blackman, a traveling salesman of defendants, on the 6th and 7th of February, 1873, represented that defendants had on hand, in Chicago, a choice stock of Valencia oranges in good, sound condition, which they would sell to defendants; and that, relying on these representations, they ordered, by telegraph, some of them to be shipped, and that when they reached St. Joseph they were not of the quality they ordered, but, at the time of delivery, were frozen, rotten and decayed. The evidence tended to show that said Blackman informed defendants, about the first of February, 1873, that plaintiffs had for sale Valencia oranges, in good condition, at their house in Chicago; that no purchase was then made of Blackman, but, several days afterwards, on the 7th of February, they ordered, by telegraph, the plaintiffs to ship twenty-one boxes of Valencia oranges, of the grade of "420's;" that plaintiffs, having none of that grade, at that time, on hand, purchased sixteen boxes of the grade, and shipped them, together with five boxes of the grade of "490's," an inferior grade, in good order—as to quality and condition; that when they were received by defendants, in St. Joseph, they were in a frozen condition; that defendants made no objection, either on account of quality or condition of the goods, till long afterwards. Foster, one of the defendants, who testified as a witness, did not in his evidence sustain his answer in regard to the averment that the goods were ordered because of any reliance on the representations of Blackman, but, on the contrary, swears that he made no purchase of him, but afterwards sent the order direct to the plaintiffs. There was no contradiction in the evidence in reference to the fruit

being in good order and condition when it was shipped, and that, although they were in a frozen condition when they arrived at St. Joseph, they were received by defendants without objection. When the goods were ordered by defendants, they were constructively delivered to them and became theirs, subject only to the right of stoppage *in transitu*, when plaintiffs delivered them, with proper instructions, to the usual carrier, for defendants. *Comstock et al., v. Affœlter*, 50 Mo. 411; 2 Kent 499. The February shipment of fruit, the evidence clearly shows, was accepted and received by defendants without objection or notice to plaintiffs that it was deficient either in quantity or quality, or that it was not of the grade they had ordered. Having been thus received by defendants, with a knowledge of its deficiency as to grade, without objection, they waived all right of future objection on such grounds, there being an entire failure of proof to establish a warranty. 3 Parsons on Con. 47; *Stevens et al. v. Mackay et al.*, 40 Mo. 224. Hence we think the direction given to the jury in the first instruction was proper, and, for the reasons authorizing that declaration to be given, the 1st, 3rd, 4th and 5th instructions asked by the defendants were properly refused, as they were in contravention of the principles above laid down. Defendant was asked to state what was the condition of the February shipment of oranges when received by them. This evidence was properly rejected because the real question was as to what their condition was when shipped, and not when received, and the acceptance of them with a knowledge of their condition and that five boxes were of a grade inferior to those ordered, without complaint, is to be taken as a waiver of their right to object afterwards, there being no warranty. 49 N. Y. 321; 39 Conn. 31.

The only defense set up to avoid recovery on the cause of action stated in the second count of the petition, was 2. WARRANTY OF QUALITY: sale by sample. an alleged breach of warranty. The instructions given on this branch of the case are

numerous and lengthy, and too voluminous to be incorporated herein. Condensing and stripping them of all verbiage, the jury were substantially told by them, that plaintiffs were entitled to recover the value of the oranges sued for in said count, with interest from time of demand at six per cent., unless they believed from the evidence that plaintiffs warranted them to be of sound and good quality; that the burden of proving a warranty was on the defendants; that in order to constitute a warranty it was not necessary that plaintiffs should have used the word warranty, but if the words actually used by plaintiffs signified an undertaking on their part that the oranges sold defendants were what they were represented to be, that would be sufficient. On the part of defendants the court instructed the jury substantially that if plaintiffs exhibited to defendants samples of oranges as fair specimens of the quality of those offered for sale, and agreed to deliver them oranges equal in quality to those shown, and relying thereon defendants ordered a quantity of oranges like such samples which plaintiffs undertook to deliver, that this was a warranty that the oranges to be delivered should equal in quality and condition those exhibited. The instructions, we think, fairly submitted the issue made in the pleadings to the jury, and as favorably as the evidence warranted for defendants. The eighth instruction was properly refused because the same principle was embraced in those given. So with the twelfth, which asked the court to direct the jury to find for defendants unless they believed there was some note or memorandum in writing of the contract, or 3. STATUTE OF FRAUDS: pleading a delivery of the goods. This instruction was properly refused, first, because the statute of frauds was not pleaded, and second, because it had nothing to do with the case as the pleadings admitted a delivery. *Sherwood v. Saxton*, 63 Mo. 78; *Rabsuhl v. Lack*, 35 Mo. 316; *Gardner v. Armstrong*, 31 Mo. 535.

The eleventh instruction was properly refused because it was misleading in not defining the place of delivery of

the goods.    The instruction given by the court in regard to the extent of defendants' liability if the jury found that there was a warranty of the goods and a breach thereof, though subject to criticism, and perhaps not sufficiently comprehensive, could not have injured defendants inasmuch as it is evident from the verdict of the jury that they found that there was no warranty.

We think, on the evidence and the law that the judgment was for the right party, and it will be affirmed, with the concurrence of the other judges.

AFFIRMED.