# D. JUNE & COMPANY, Appellant, v. J. V. FALKIN-BURG et al., Respondents.

### St. Louis Court of Appeals, May 7, 1901.

1. **Bill of Exceptions, Time of Filing: DUTY OF CLERK OF CIR-CUIT COURT.** The appellant should not be made to suffer for the omission of the clerk of the circuit court to mark a bill of exceptions filed when deposited with him, but the bill should be treated as filed on the day it was deposited with the clerk to be filed.

2. **Sale: WARRANTY: DEFECTS VISIBLE.** A warranty will not, as a general rule, cover a defect visible to the senses, or defects known to the buyer, yet if the vendor clearly and unequivocally undertakes to warrant against an obvious defect, he can not escape by setting up that the defect was an open one and visible to the purchaser.

3. ———: ———: **RESCISSION OF SALE.** When an article is sold on an express or implied warranty, the purchaser may, after discovering the defect, retain the article and defeat a recovery of the purchase price to the extent of the difference between the value as represented and its real value.

Appeal from Scotland Circuit Court.—*Hon. Edwin R. Mc-Kee,* Judge.

AFFIRMED.

#### STATEMENT OF THE CASE.

The suit is on two promissory notes for $166.65 each, payable to plaintiffs, made by defendant J. V. Falkinburg, and indorsed by Weber & Smulling. The answer of Falkinburg admitted the execution of the notes, alleged they were

given as the purchase price of an upright portable engine and that for reasons alleged the consideration had failed. The new matter set forth in the answer was put in issue by a reply. The issues were submitted to a jury who returned a verdict for defendant. Plaintiff appealed.

The case was brought here in the form of abstracts. From them we find that the time for filing bill of exceptions was extended to September 1, 1900. That on August 30, 1900, the following entry was made: "Now at this day bill of exceptions in above entitled cause was received, signed by the judge and made a part of this record."

From the appellant's abstract we find the following in respect to the motion for new trial, dated Monday, August 21, 1899:

"At this day comes the plaintiff by their attorneys and files motion for new trial which was by the court overruled."

By section 1719, Revised Statutes 1899, the times for holding terms of the circuit court in Scotland county are the first Mondays in February and August. It sufficiently appears, therefore, that the bill of exceptions was signed by the judge in term time and that it was ordered by the court to be made a part of the record. As the cause had not been continued to the August term, 1900, it was not before the court for any purpose, the only power reserved being in the judge to approve, sign and seal the bill of exceptions at chambers. The order made at the August term, 1900, ruling that the bill was received, signed and filed and made a part of the record is *coram non judice.* The abstract, however, shows that the judge did in fact sign and seal the bill of exceptions and though the order is void as an order of the court, it furnishes evidence that the bill was, on the thirtieth day of August, 1900, signed by the judge and delivered to the clerk, whose duty it was then and there to mark it filed. If he omitted this duty the ap-

pellants should not be made to suffer for the omission, but the bill should be treated as filed on the day it was deposited with the clerk to be filed.

The abstracts fail to show that an exception was saved to the order of the court overruling the motion for a new trial. To cure this defect the appellant moved to have the original bill of exceptions sent up to this court. In obedience of an order of this court, the clerk of the Scotland Circuit Court has forwarded here a supplied bill of exceptions (the original having been destroyed). By the supplied bill, it *does* appear that appellant duly saved its exception to the ruling of the trial court in overruling its motion for a new trial. The evidence is that on January 30, 1894, respondent Falkinburg, on solicitation of appellant's general agent, made his order on appellant for "one Champion engine 16-horsepower, portable, rebuilt June engine" complete for which he agreed to pay $550 in installments. Subject to an express warranty that the engine is warranted to be made of good materials throughout, to be constructed in a workmanlike manner, to develop as much power as any engine of the same size in the market with certain conditions, not necessary to be set out. Appellants accepted the offer and shipped to Luray, Missouri, an engine consigned to Weber & Smulling, its local agents, for Falkinburg. The engine did not arrive as early as it was understood it should arrive. Falkinburg having examined the engine found it by measurement to be a twelve-horsepower engine and refused to accept it and gave notice to appellant's agents that he would not accept the engine for the reason that it was not the engine he had ordered and for the further reason that it had arrived out of time. Weber & Smulling then made a proposition to Falkinburg to take the engine at $500.00 and on May 8, 1894, wrote G. W. Penn, the general agent of appellant, as follows:

"Luray, Missouri, May 8, 1894.

"Mr. G. W. Penn, Council Bluffs, Iowa.

"Dear sir:—I am here to settle with Falkinburg. It seems that he is off, or we are, and I think he is; but the best way out, I hardly know. He says the engine is only twelve-horsepower. Claims it by measurement. He makes this proposition this morning, and signs it, that he will give his notes—

One note, dated May 20, 1894, due January 1, 1895  $166.70
One note, dated May 20, 1894, due January 1, 1896    166.65
One note, dated May 20, 1894, due January 2, 1897    166.65
                                                    ————————
                                                     $500.00

But will not pay any freight. Now Weber & Smulling will pay half the freight if you will pay half. This will save lots of trouble. I think this is the best way out of it. Write me.

"HENRY WEBER, at Gorin, Scotland county, Mo.

"One-half the freight will be about $30. He will pay this much, but ask credit on note for that much. We will pay the rest or rather have paid it. We must have answer at once, He will not wait—must have answer by Saturday.

"H. W."

Weber & Smulling were then directed by appellant to let Falkinburg have the engine on the terms proposed and on an express warranty that the engine was of a sixteen-horsepower. Falkinburg accepted the proposition and executed the three notes as proposed. The notes were indorsed by Weber & Smulling and forwarded to and accepted by appellant. The first note was paid by Falkinburg at maturity. He refused to pay either of the others, hence, this suit. Falkinburg testified that he was an experienced engineer, had run engines for the past forty years and knew when he agreed to take the engine that it was a twelve-horsepower engine, but did not examine the

boiler, that the engine, if the boiler had been sufficient to furnish the power, would develop sixteen-horsepower but that the boiler was defective, that about twenty-five of its one hundred and fifty flues were plugged up and that it would not furnish sufficient steam to run more than an eight-horsepower engine. That he undertook to run a separator for two seasons with the engine, but on account of the defects of the boiler he made poor success and in July of the second season abandoned the effort. That he also tried to run a saw with the engine but had very poor success with it, that it would run from fifteen to twenty minutes when the engine would have to be stopped in order to accumulate steam, to start it up again. The evidence of Falkinburg as to the defects of the boiler was corroborated by a number of witnesses who had seen it in operation and by some experienced engineers who had examined it. On August 5, 1895, Falkinburg wrote Holderman (of D. June & Co.) as follows:

"Luray, Mo., August 5, 1895.
"Mr. Holderman, Fremont, Ohio.

"Dear Sir:—Yours received and contents noted, and will say in regard to that engine: After I adjusted the valve, it did work well and is as good as any engine in the State of its size—8x10, which is 12 H. P. and the boiler. Since I adjusted the draft for thrashing, it does all right. You said you can prove that engine did a 20 H. P. work. If you can, you can prove anything you want to. We do not have that kind of witnesses out here. You said you would get your money; any how I would suppose you could if you can get men to swear that engine would do 20 H. P. work. You said you understood my case. If you do, you know you will get your money on time. I do not get my money by getting men to prove that green slabs steam would pull 20 H. P.—8x10 en-

gine.   So you hunt up your men and send their names to the
Central Bank of Luray, and the note on time and your money
will be there.   Please write again and oblige.

"Yours truly,<br>
"J. V. FALKINBURG."

There is some evidence tending to prove that Falkinburg
gave appellants notice of the defective condition of the boiler
a short time after he begun to operate it, but none that he gave
notice by registered letter as required by the contract of Jan-
uary 30.   The court refused the following instructions asked
by appellant:

"Although the jury believe, from the evidence in the cause,
that the machine was warranted to be a 16-horsepower, and
would do good work; yet if you further believe the defendant
at the time knew that the engine was a 12-horsepower, and
after learning of the defects and failure to comply with the
terms of said warranty he paid a part of the purchase price and
informed plaintiff that said machinery was good and did good
work and continued to use the same, then the law presumes the
defendant waived said warranty.

If the jury believe from all the evidence in the cause that
the defendant, Falkinburg, signed the order for the engine in-
troduced in evidence and same was shipped to him on the faith
of said order, and was received by him at Luray, Missouri,
and plaintiff understood and believed that he was accepting
said machinery under said order, and warranty contained
therein, then said defendant, Falkinburg, has no right to rely
on any other warranty made by any agent of plaintiff, and
your verdict should be for the plaintiff."

And gave instructions on the part of appellant, to the
effect if the engine was bought and received on the written

order of January 30, 1894, to disregard the defense and find for appellant.

On the part of respondents, the court instructed in effect, that if the engine was not bought on the order of January 30, 1894, but was bought in May following, and that appellant guaranteed the engine to be of sixteen-horsepower and that Falkinburg relied on the warranty and believed it would develop sixteen-horsepower and that it would not in fact develop that power and was not worth more than had been paid on it, to find for respondents.

*C. H. Hilbert* and *Smoot, Mudd & Wagner* for appellant.

(1)   The court erred in the admission of testimony upon the examination of Weber, in this:   That it permitted him, after stating that his authority as agent was in writing, to speak with reference to it verbally.   Johnson Co. v. Wood, 84 Mo. 489.   The best evidence of which a case in its nature is susceptible must be adduced.   See 1 Wharton on Evidence, sec. 60.   (2)   The machine was sold under a special warranty, the terms and conditions of which were set out in the warranty. The question of an implied warranty did not enter into the controversy, and they were bound by the terms and conditions of the special warranty.   John M. Boyer v. Neel, 50 Mo. App. 26; Paulson .v. D. M. Osborne & Co., 27 N. W. 203. Prompt action was required on the part of the purchaser if he desired to rescind the contract.   See authority above cited. Also, Smalley v. Hendrickson, 29 N. J. Law, 271; Morrel School Township v. Harrison, 74 Ind. 930.   No offer was made upon the part of the defendants to restore the property, nor to return it, under the conditions of the warranty.   It is a well established rule that a warranty of soundness will not cover a defect visible to the senses.   Thompson v. Botts, 8 Mo.

710.   The rule that a general warranty of soundness does not cover patent defects, nor defects known to the buyer, is well established.   Samuels v. Guin's Est., 49 Mo. App. 8.

*J. W. Waters* and *Pettingill & Myers* for respondents.

(1)   As no motion in arrest is preserved by the bill of exceptions, no demurrer filed and no portion of the answer challenged in any way, the judgment will not be reversed for defects in the answer or in any other part of the record, unless such defects are of such a nature that they can not be cured by the statute of jeofails.   State ex rel. v. Thompson, 149 Mo. 441.   (2)   Where it does not appear from the record nor from the indorsements upon it, that a supposed bill of exceptions was ever filed, it will be disregarded upon appeal as not being properly authenticated.   State v. Rolley, 135 Mo. 677.   A bill of exceptions does not become a part of the record until it is both signed and filed.   Johnson v. Hodges, 65 Mo. 589. A bill of exceptions must be filed in order to constitute a part of the record and this must appear by an entry in the record proper; neither the indorsement of the clerk on the bill of exceptions, filed, with day and date, nor the statement by the judge that "it is signed, sealed and made a part of the record" nor both, will suffice.   Pope v. Thompson, 66 Mo. 661, and cases cited.   (3)   It has been uniformly held that unless an exception be taken and preserved by bill of exceptions to the action of the court in overruling a motion for new trial there is nothing before the appellate court for review except the record proper.

BLAND, P. J.—We think it is clear from the evidence, that Falkinburg refused to accept the engine under his order of January 30, and that a new contract was made in May fol-

lowing, and that his right to make the defense he set up must be governed by the latter agreement. Under this agreement the appellant expressly warranted the engine to be a sixteen-horsepower one, but Falkinburg testified that he knew it was not a sixteen-horsepower engine and it is contended by appellants, because he knew this fact he can not rely upon the warranty to make good that which he knew did not exist. A warranty will not, as a general rule, cover a defect visible to the senses, or defects known to the buyer. Thompson v. Batts, 8 Mo. 710. Yet if the vendor clearly and unequivocally undertakes to warrant against obvious defect, he can not escape by setting up that the defect was an open one and visible to the purchaser. Samuel v. Gwin's Estate, 49 Mo. App. and cases cited. The evidence in this case brings it, we think, clearly within the rule announced in the Samuels case. There was an express warranty by letter that the engine was a sixteen-horsepower one, and the evidence of Falkinburg is that the engine measured for a twelve-horsepower, but with a sufficient boiler it would develop sixteen-horsepower, that he did not examine the boiler when he purchased, and knew nothing of its defects, and that he relied on the warranty and expected to get sixteen-horsepower out of the engine. The boiler was an essential part of the machinery. Its want of capacity to produce the necessary steam to develop the latent powers of the engine, rendered defective the machinery as a whole and was a substantial breach of the warranty.

II. The contention of appellant that Falkinburg was bound to rescind or offer to rescind the contract when he discovered the defects of the machinery, to entitle him to the defense set up, is not the law in this State. On the contrary, the authorities here are that when an article is sold on an expressed or implied warranty the purchaser may, after discovering the defect, retain the article and defeat a recovery of the purchase

price to the extent of the difference between the value as represented and its real value.    St. Louis Brewing Ass'n v. McEnroe, 80 Mo. App. 429; Miles v. Withers, 76 Mo. App. 87; Miller v. Hunter, 82 Mo. App. 632; Compton v. Parsons, 76 Mo. 455; Brown v. Weldon, 99 Mo. 564; Schoenburg v. Loker, 88 Mo. App. 387.

III.    Objections were interposed by appellant to the evidence of Weber in respect to the May agreement, on the ground that his agency was in writing which showed that he had no authority to make any changes in the order or contract of January 30.    Weber's evidence is that he was notified by Falkinburg that the engine was a twelve-horsepower engine and that he would not receive it.    That he notified appellant of this fact, and that by letter he was directed to make the May agreement with Falkinburg.    Weber was specially authorized by appellant to make the new agreement and what he did was approved of by the appellant, by the acceptance of the fruits of the transaction—the notes—and it is in no position now to object to what it expressly authorized to be done and ratified after it was done.

We discover no reversible error in the record and affirm the judgment.    All concur.