ALABAMA STEEL & WIRE COMPANY, Respondent, v. ARTHUR E. SYMONS et al., Appellants.

**Kansas City Court of Appeals, June 20 and December 19, 1904.**

1. **SALES: Implied Warranty: Acceptance: Instruction: Sample.** Defendants ordered 5,000 kegs of nails from the plaintiff, saying "they were to be used in the manufacture of boxes and to be driven by machinery and must have broad heads and be of uniform length," and enclosed samples. On receipt of a shipment defendants asked an extentsion of sixty days to pay for those received and countermanded the order for the balance, returning forty kegs to plaintiff, the remainder, after examination were disposed of to defendants' customers. The jury were instructed that if defendants accepted the nails knowing they were inferior in quality, they could not object to such quality. *Held*, by Broaddus, J., that the instruction was right as there was no implied warranty. Ellison, J., in a separate opinion, Smith, P. J., concurring, holds that there was an implied warranty that the nails should conform to the sample, and the instruction should not have been given.

2. ————: ————: **Pleading: Answer.** On pleading set out in the opinion Broaddus, J., holds plaintiff entitled to judgment on the pleadings as the answer fails to allege an expressed or implied warranty of fraud. Ellison, J., in a separate opinion, Smith, P. J., concurring, holds that at the trial the parties proceeded upon the theory of a warranty and an alleged breach thereof and the court must do as the parties have done-and overlook any question as to the pleading.

3. ————: ————: **Acceptance: Diminution of Purchase Price.** Where there is a warranty expressed or implied the vendee upon a breach thereof may return the goods, or accept the same and set up a breach of warranty in diminution of the purchase price.

### On Motion For Rehearing.

4. ————: **Samples: Intention: Appellate Practice: Trial Theory.** Sales by sample are matters of intention and where samples of nails desired are exhibited to a manufacture and accepted by the latter as a sample of the nails agreed to be manufactured, and at the trial the evidence and instruction is upon the theory that the sale was by samples, the appellate court treats the case as made by the parties.

5. ———: ———: Manufacturer: Specific Purpose: Warranty: Instruction. Whether the sale be by sample or by manufacture or for a specific purpose, the instruction set out in the former opinion is improper, as in each mode of sale there is an implied warranty and the buyer does not waive his right to contest the contract price by accepting the goods.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED.

*Karnes, New & Krauthoff* for appellants.

(1) The first instruction given by the circuit court on behalf of the plaintiff reduced to its last analysis, told the jury: (a) If defendants accepted the nails; (b) If defendants knew they were inferior in quality or not the quality of nails contracted for and ordered by defendants; (c) Then defendants can not now object to the quality, and (d) Your verdict must be in favor of plaintiff for the amount sued for. New Birdsall Co. v. Keys, 99 Mo. App. 463, and cases cited; Brown v. Wellon, 27 Mo. App. 251, 99 Mo. 564; Werner v. O'Brien, 40 Mo. App. 489; Miles v. Withers, 76 Mo. App. 87; Assn. v. McEnroe, 80 Mo. App. 429; Schoenberg v. Loker, 88 Mo. App. 387; June v. Falkinburg, 89 Mo. App. 571. (2) The first instruction given on behalf of plaintiff is also open to the objection that it submits to the jury a question of law; that is to say the jury are told that if "the defendants accepted the nails" certain results would follow. It is respectfully submitted what is an acceptance is a question of law. (3) The second instruction given on behalf of the plaintiff is erroneous in that it submits to the jury an issue not made by the pleadings and not disclosed in the evidence. (4) The jury are told in the third instruction given for the plaintiff that "defendants can not off-set or have allowed to them any damage or loss by reason of such defective nails, if any, which damage

or loss was not fairly in the contemplation of both parties at the time the contract for said nails was made." This instruction is also erroneous because submitting a question not raised by the pleading and not disclosed in the evidence.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) Instruction numbered one complained of by appellants is sound in principle and supported by the authorities. 24 Am. and Eng. Ency. of Law (2 Ed.), 1092; Stevens v. McKay, 40 Mo. 224; Crawford v. Elliott, 78 Mo. 497; Lumber Co. v. Warner, 93 Mo. 374; Water, etc., Co. v. Lamar, 140 Mo. 145; Assn. v. Gorman, 76 Mo. App. 184; Ashford v. Schoop, 81 Mo. App. 539; Cook v. Finch, 117 Ga. 541, 44 S. E. 95; Lee v. Bangs, 43 Minn. 23, 44 N. W. 671; Rosenfield v. Swenson, 45 Minn. 190, 47 N. W. 718; Thompson v. Libby, 35 Minn. 443, 29 N. W. 150; McClure v. Jefferson, 85 Wis. 208, 54 N. W. 777; Jones v. McEwan, 91 Ky. 373, 16 S. W. 81, 12 L. R. A. 399; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Williams v. Robb, 104 Mich. 242, 62 N. W. 352. (2) The instruction complained of is not open to attack under any theory, in view of the pleadings in this case. 24 Am. and Eng. Ency. of Law (2 Ed.), 1126; 19 Ency. Pl. and Pr., 44; 2 Mechem, Sales, secs. 1311, 1320, 1350, 1391; Blashfield, Instructions to Juries, sec. 84; Graff v. Foster, 67 Mo. 512; Wade v. Scott, 7 Mo. 509; Gordon v. Bruner, 49 Mo. 570; Northrup v. Ins. Co., 47 Mo. 443; Bank v. Armstrong, 62 Mo. 59; Christian v. Ins. Co., 143 Mo. 460; Garvey v. Hauck, 85 Mo. 14; Calhoun v. Paule, 26 Mo. App. 274; Long Bros. v. Armsby Co., 43 Mo. App. 253; Fenwick v. Bowling, 50 Mo. App. 516; Smith v. Rembaugh, 21 Mo. App. 390; Shepherd v. Padgitt, 91 Mo. App. 473; Brown v. Weldon, 27 Mo. App. 251; Stevens v. Supply Co., 67 Mo. App. 587; Bank v. Westlake, 21 Mo. App. 565; Matson

v. Frazer, 48 Mo. App. 302; Wright v. Fonda, 44 Mo. App. 634; Kirby v. Railroad, 85 Mo. App. 345; Fegan v. Seed, etc., 92 Mo. App. 236; Smith v. Coe, 170 N. Y. 162, 63 N. E. 57; Weil v. Unique, etc., Co., 80 N. Y. Supp. 484; Knable v. Stove Co., 19 Misc. (N. Y.) 152; Paving Co. v. Gorman, 103 Mich. 403, 61 N. W. 665, 27 L. R. A. 96; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104; Day v. Mapes-Reeves Co., 174 Mass. 412, 54 N. E. 878; Obery v. Lander, 179 Mass. 125, 60 N. E. 378; Maynard v. Render, 95 Ga. 652, 23 S. E. 194; Misner v. Granger, 4 Gil. (Ill.) 69; Shirk v. Mitchell, 137 Ind. 185, 36 N. E. 850; Case v. Grim, 77 Ind. 565; Blumenthal v. Grember, 130 Cal. 384, 62 Pac. Rep. 599; Schopp v. Taft, 106 Iowa 612, 76 N. W. 843. (3) The other points raised by appellants are frivolous. Webster's Dictionary; The Century Dictionary; Standard Dictionary; Stevens v. McKay, 40 Mo. 224; Greenleaf v. Hamilton, 94 Me. 118, 46 Atl. Rep. 798; Ellis v. Tips, 16 Tex. Civ. App. 82, 40 S. W. 524.

BROADDUS, J.— The petition alleges that, "plaintiff sold, furnished and delivered to defendants at defendants' instance and request, goods, wares and merchandise during the year 1901 to the aggregate amount and of the aggregate value of $2,321,99; that said defendants are entitled to credits thereon to the aggregate amount of $1,714.70 . . . that said goods, wares and merchandise were of the kinds, quantities and qualities as shown by itemized statement of account, and were sold and delivered upon the dates as therein given, and that the prices therefor, as shown by said itemized statement of account, are reasonable and proper prices of and for said goods, wares and merchandise, and the prices agreed upon by and between plaintiff and defendant, and that the balance unpaid on said account is $607.29."

The answer admits the sale and delivery of the nails, but avers that the nails so sold and delivered

were defective in that the heads of the same were not sufficiently broad, the points were poor and they were not uniform in length; and that a large number of them were bent, and varied in length, some of them being an inch shorter than other nails in the same keg. The answer further avers that the nails delivered were not of the value paid for them and that defendants owe plaintiff nothing. The answer however alleges that defendants paid plaintiff $4,815.11 for nails delivered.

The reply, after denying the new matter set up in the answer, states: "In the month of May, 1902, plaintiff sold and delivered to defendants $1,588.28 worth of nails, which defendants paid, less a discount of $35.20; and during said month also sold and delivered to defendants $1,512.13 worth of nails which they paid, less a discount of $33.61; but that the sale of the last named nails was made prior to the sale of nails for the balance of the purchase price for which the suit is brought."

On May 4, 1901, the defendants made an order on plaintiff for 5,000 kegs of wire nails (the nails in controversy), 3,000 kegs of which were to be shipped to Chicago, and 2,000 kegs to Kansas City, Missouri. On the same day, the defendants addressed to plaintiff a letter in reference to said nails which, among other things, contained the following: "As our nails are for use in the manufacture of boxes and are all driven by machinery, it is necessary that they have extra broad heads and be as near uniform in length as possible. We enclose a few samples." Plaintiff accepted the order and made and shipped four car loads of nails. Defendants asked and obtained an extension for sixty days' time to pay for a part of the nails which had been delivered, and the balance of the order was countermanded. Forty kegs of the nails were returned to plaintiff. Except those returned, all the nails shipped, after being examined by defendants, were received and disposed of by them to their customers.

The evidence of the plaintiff tends to show that the nails in question were made to conform substantially in compliance with the specifications. One of the witnesses examined four kegs of those returned. He stated that there were about 30,000 nails to the keg; and that he emptied them from the kegs and upon careful examination, after going over 130,000 nails, he found only 193 that were defective and 175 of a different size. Defendants' evidence was to the effect that the nails were defective. Some of them shorter than others; some without points; some bent; and others with small heads. The estimate of one of defendants' witnesses was that one-third of the nails the defendant received were defective. It is admitted that defendants received and used the nails knowing that they were defective. After some of the nails had been shipped, defendants complained to plaintiff that they were defective in the particulars mentioned, but did not offer to return them, other than the forty kegs reshipped to plaintiff, as stated, and for which credit was given. The finding and judgment were for the plaintiff and defendants appealed.

The only issue made by the pleadings was the value of the nails received by defendants, as the contract price alleged in the petition was not denied. On the issue thus presented the respective parties introduced their evidence. The principal error complained of by defendants was the giving of instruction number one on behalf of plaintiff, which is as follows:

"The court instructs the jury that if you believe from the evidence that the defendants accepted the nails for the purchase price of which this suit is brought, knowing they were inferior in quality, or not the quality of nails contracted for and ordered by defendants, then defendants can not now object to the quality, and your verdict must be in favor of plaintiff for the amount sued for." The objection to the instruction is that under the evidence there was an im-

plied warranty at least that the nails were to be of a certain quality; and such being the case, defendants had the right to retain the nails and show the difference between the contract price and their actual value in diminution of such contract price. The question raised has been before the supreme and appellate courts of this State in many cases. In Brown v. Weldon, 27 Mo. App. 251, and 99 Mo. 564, the suit was on a note given for the purchase price of a jack and a horse. The court held:

"In an action on a note given for the purchase price of a chattel bought for a particular purpose, either upon an express or implied warranty, and with or without fraud, it is not necessary, to enable the purchaser to avail himself of the plea of the failure of consideration, that he return or offer to return the article, or offer to rescind the contract, or that such article be wholly worthless." And: "If the purchaser retain the article and does not offer to return it, and it is not wholly worthless, the plea of failure of consideration is available to defeat a recovery on the note only to the extent of the difference between the represented and real value of the article." The principle in that case was followed in Werner v. O'Brien, 40 Mo. App. 483; Miles v. Withers, 76 Mo. App. 87; June & Co. v. Falkinburg, 89 Mo. App. 563; and Osborne & Co. v. Henry, 70 Mo. App. 19.

There is another class of cases referring to sales of manufactured articles. In Schoenberg v. Loker, 88 Mo. App. 387 the court held: "If articles are not made according to sample and are unsuited for the purpose for which made, the defendant, by retaining them and not offering to return them, is not bound thereby to pay the contract price." See also, St. Louis Brewing Assn. v. McEnroe, 80 Mo. App. 429.

There are also to be found in the reports of the State a number of decisions which plaintiff claims is the law applicable to the facts of this case. In a case

where apples were sold on warranty, the court held: "Where a party knowingly accepts of goods of an inferior quality delivered in pursuance of a contract, he can not afterwards object to the quality of such goods." Stevens v. McKay, 40 Mo. 224. "One who accepts and receives lumber in part compliance with his contract of purchase waives the objection that its quality does not meet the requirements of the contract." [Black River Lumber Co. v. Warner, 93 Mo. 374; see also, Ashford v. Schoop, 81 Mo. App. 539.] "It is one of the established principles of the law of sales, a principle founded on the plainest details of justice, that where an article is furnished, pursuant to a contract requiring it to be of a certain quality, the buyer must at least object to its quality within a reasonable time after its receipt, else the law will treat the receipt as a final acceptance, and preclude any later objection on the ground of inferior quality." [Water & Light Co. v. City of Lamar, 140 Mo. 145.] In the latter case, the court cites the following rule laid down in Benjamin on Sales (section 703), which is as follows: "When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them, for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by the buyer which he would have no right to do unless he were the owner of the goods."

Speaking for myself, I am free to say that there is at least an apparent conflict in the authorities of this State upon the question. But however that may be, I do not think, under the facts in the case, there is any doubt about the instruction being right.

After receiving the nails and ascertaining, in their judgment, that they were defective in quality, and therefore did not comply with the terms of the contract of sale, the defendants were not bound to accept them.

The authorities are all agreed on this point. And under certain of said authorities, they were not bound to return them, nor even offer to rescind the contract, but they might have retained them and set up defect in quality in diminution of the purchase price. But when they returned a part of the nails and received credit for them and used the residue in their business, and thereby exercised ownership over them, their acts in so doing amounted to an acceptance and to a waiver of the defects in the quality of the nails. They thus not only received the goods, but in law they accepted them; which precluded them from making a defense on a suit for the purchase price that they were not as warranted. The excerpt from Mr. Benjamin's work makes a clear distinction between a receipt and an acceptance of goods under a sale.

Instructions number two and three given at the instance of the plaintiff are objected to as improper. They have no relation to the case whatever. But as they could not have been applied by the jury to the facts, we do not see how they could have prejudiced the defendant.

I am of the opinion that plaintiff was entitled to a judgment on the pleadings. It was no defense to merely allege that the nails were defective and that defendants had paid full value for them. A purchaser may, and often does, pay more for an article than its real value, and he often buys that which he knows to be defective. In order to constitute a defense, the answer should have alleged either an express or implied warranty or fraud. [Graff v. Foster, 67 Mo. 512; Stevens v. McKay, supra.] And it wholly fails to state that the nails delivered, in quality, did not comply with the terms of the contract.

For the reasons given I hold that the cause should be affirmed, but to this opinion *Smith, P. J.,* and *Ellison, J.* dissent.

ELLISON, J.—The plaintiff is a manufacturer of nails, and those in the account sued on were to be manufactured in accordance with a sample furnished by defendants. The sale of the nails was a sale by a manufacturer by sample. And, as appears in the opinion of Judge BROADDUS, they were sold for a specific purpose.

In such character of sale there is an implied warranty that the goods will correspond to the sample. This is a well established rule of law and it distinguishes such sales from an ordinary sale of personal property *in praesenti* where the rule of *caveat emptor* would apply, where no express warranty has been taken and where an implied warranty would not arise.

In such sales by sample, which fail to conform to the sample, while the buyer is not bound to accept the goods when delivered and may refuse them; still, he may keep and use them, knowing their deficiency, and yet insist on the implied warranty by way of diminution of the contract price. [Ferguson v. Huston, 6 Mo. 414 (opinion of Judge NAPTON); Wade v. Scott, 7 Mo. 509 (opinions by Judges SCOTT and NAPTON). Judge BLAND so stated the law in Schoenberg v. Loker, 88 Mo. App. 387. .

In the respect here considered a sale by sample is not different from a sale for a specific purpose (and the sale in this case was both by sample and for a specific purpose) in which instance there is an implied warranty that the chattels shall be fit for such purpose. In such case it is uniformly held that the buyer may keep the chattels and rely on the warranty in diminution of the contract price. [Brown v. Weldon, 27 Mo. App. 267-273; s. c., 99 Mo. 564; Comings v. Leedy, 114 Mo. 478; Werner v. O'Brien, 40 Mo. App. 483; Danforth v. Crookshanks, 68 Mo. App. 311; Brewing Co. v. McEnroe, 80 Mo. App. 429; New Birdsall Co. v. Keys, 99 Mo. App. 463; June & Co. v. Falkinberg, 89 Mo. App. 563.] A reference to the text writers will show that this

is well nigh the universal rule. I refer here to Biddle on Warranties, secs. 291, 303; 2 Mechem on Sales, sec. 1844; Story on Sales, sec. 455a; Benjamin on Sales, sec. 901 (Ed. 1899).

It is sometimes suggested that the rule only applies when the warranty is express. But by reference to the cases just cited it will be seen that it is held to apply in cases where the warranty is that implied warranty which the law attaches to the contract of sale. And so it has been stated in the text books and in adjudicated cases in other States. [Muller v. Eno, 14 N. Y. 597; Holloway v. Jacoby, 120 Pa. St. 583.]

There are cases where no question of warranty is made and the vendee accepts the chattels *as in compliance* with the vendor's agreement in which it would be considered that the parties had agreed that the contract had been properly performed, as in Black River Lumber Co. v. Warner, 93 Mo. 386. But we have no such case. I do not regard the case of Water Co. v. Lamar, 140 Mo. 145, as a case like the one before us. The sale in that case was not the character of sale here and no question of implied warranty was made or suggested. A remark is made by Judge BIGGS in Ashford v. Schoop, 81 Mo. App. 1. c. 545, to the effect that an acceptance of goods would waive an *implied* warranty. It can make no difference in the rights of the parties whether the warranty is express or implied. I regard the judge's statement as merely a passing remark, not arising in the case. Judge BIGGS'S had written the opinion in Orange Growers' Assn. v. Gorman, 76 Mo. App. 184, which was adopted by the Supreme Court in 161 Mo. 203, which it seems to me to be entirely in line with the views I entertain of this case. I have not found any cases in this State involving a question of warranty which in my view differ from what I have here written. In this connection care should be taken not to confound the right of the buyer to rescind a contract (the parties being put back *in statu quo*) and his

right arising on a warranty. If he accepts the goods with knowledge and yet retains them, *he loses the right to rescind,* but by no means does he lose his right under the warranty. [Benjamin on Sales, sec. 901 (Ed. 1899).]

In my view, it follows from the foregoing that the trial court erred in giving the instruction set out by Judge BROADDUS. I think, furthermore, that it is followed by some other instructions with which it is not easily reconciled.

The pleadings in the case do not show that plaintiff was a manufacturer; nor that the sale was by sample; nor anything in reference to an implied warranty. But notwithstanding this, the evidence, from beginning to end, was introduced and received without objection as though such matters had been formally pleaded. The plaintiff took upon itself to show, not merely that it sold to defendants at their request certain goods which were reasonably worth the price charged, as set out in the petition, but it proceeded to show that it was a manufacturer of nails; that it manufactured the nails in question for defendants on their order and by the sample furnished. Evidence in behalf of defendants was received as to the real value of the nails and of their failure to correspond with the sample as though the pleadings justified it. In such state of case we must do as the parties have done, and overlook any question as to pleading. [Hill v. Meyer Bros., 140 Mo. 433; Stewart v. Outhwaite, 141 Mo. 562; Simon v. Simcox, 75 Mo. App. 143; Pope v. Ramsey, 78 Mo. App. 157.]

I think the judgment should be reversed and the cause remanded. *Smith, P. J.,* concurs; *Broaddus, J.,* dissents in separate opinion.

### OPINION ON MOTION FOR REHEARING.

ELLISON, J.—In a motion for rehearing the foregoing majority opinion is criticised by counsel for stating that the sale made by plaintiff was a sale by sample. The plaintiff is a manufacturer and sold to defendants

a quantity of nails to be manufactured. A sample of the nails desired was exhibited to plaintiff by defendants and accepted by plaintiff as a sample of the nails to be manufactured. The plaintiff's case as shown in the examination of witnesses and instructions is put upon the theory that the sale was by sample. The jury were instructed, at plaintiff's request, that if the goods were equal to the sample the finding should be for plaintiff. Ordinarily, a sale by sample is a sale of goods then in existence in bulk but not present for examination by the buyer. Whether a sale is by sample depends upon the facts disclosing the intention of the parties. We treated the case as it was made by the parties.

But in view of the fact that there is to be a retrial of the cause, we will add that (as has been already intimated) whether the sale is to be considered as made by sample; or by a manufacturer; or for a specific purpose known to the seller, the instruction complained of by defendants should not have been given. In *each* mode of sale there is an implied warranty by the seller. In *neither* mode does the buyer waive his right to contest the contract price by accepting the goods.

The motion should be overruled.