ATTEBERRY, Defendant in Error, v. POWELL, Plaintiff in
Error.

1. Though an answer to a petition may contain different defences separately
   stated, they must be consistent defences; in an action for slanderous words,
   the defendant can not be allowed in the same answer to deny and also to
   justify the speaking of the words charged. (R. C. 1855, p. 1233, § 14.)
2. An answer in an action of slander justifying the speaking must confess
   the speaking; an answer merely stating that the words spoken are true is
   not sufficient as a justification; it should state the facts constituting the
   crime or offence imputed so that an issue of either law or fact may be
   found.
3. Where the allegations or denials of a pleading are so indefinite or uncer-
   tain that the precise nature of the charge or denial is not apparent, or
   where they fail in any other respect to conform to the requirements of the
   law, the court may require the pleading to be made definite and certain,
   and otherwise to conform to the law, by amendment. (R. C. 1855, p.
   1236, § 31.)
4. Where the petition, in an action of slander for charging the plaintiff with
   perjury, is defective, in that it does not state how the alleged perjury was
   committed, the defect will be aided by a plea of justification setting forth
   the circumstances under which the alleged false oath was taken.
5. In an action for speaking slanderous words, it is calculated to mislead the
   jury to refer it to them to determine whether the defendant "in substance"
   spoke or published the words charged, without explaining the meaning that
   the law would attach to that expression in connection with the proof of the
   slander charged.

*Error to Dallas Circuit Court.*

This was an action for the speaking of slanderous words.
The petition contains two counts. In the first count it was
charged that the defendant on, &c., at, &c., " in a certain

conversation with one Absalom Austin, and in the presence and hearing of divers other good citizens of, &c., in a certain conversation with said Absalom Austin of and concerning the said plaintiff George W. Atteberry, and of and concerning the character of said plaintiff for honesty and integrity, and of and concerning an affidavit and oath which plaintiff before that time had made and given before the county court of said county at its May term, 1857, in the matter of William F. Tinsley's right to enter or purchase certain public land, to-wit, forty acres of land in said county, maliciously spoke the following malicious, false and slanderous words of and concerning the character of plaintiff, and of and concerning the aforesaid oath, to-wit, ' they,' meaning plaintiff Atteberry and Tinsley, ' have got my board down ; they have worked me out of a piece of land that I can prove that I " claimed by twenty persons ; I don't know that I can prove any claim on that particular piece that Tinsley got without getting some person to swear as they did for Tinsley ;' thereupon being asked who swore for him, meaning Tinsley, he (defendant) said ' Atteberry,' meaning the oath which plaintiff had as aforesaid made of and concerning the said entry or purchase aforesaid, and meaning thereby then and there, and was so understood by him the said Austin and those present, that plaintiff had sworn a lie, and had been guilty of the crime of perjury in the aforesaid oath concerning said entry or right of purchase proved up as aforesaid by him, the said plaintiff; by reason of which," &c.

In the second count it was charged that the defendant " on," &c., in the presence and hearing of Wesley Austin, and divers other citizens of Dallas county, in a conversation with said Wesley Austin of and concerning plaintiff, and of and concerning the oath aforesaid, which he, the said plaintiff, had made before the county court of said county of Dallas (said oath being made and taken by said court under the authority of law in deciding upon the right of said Tinsley to enter or purchase forty acres of land in said county), did speak, utter and publish the following false and slander-

ous words: ' they have taken a piece of my land by false swearing;' he (defendant) thereby meaning that plaintiff, in making said oath, had sworn false, and had been guilty of the crime of perjury; and he then, said defendant, was thereby then and there so understood to mean that plaintiff had been guilty of the crime of perjury by the said Wesley Austin and those persons present; wherefore and by reason of which," &c.

A demurrer to this petition having been overruled, the defendant filed the following answer: " Defendant comes and for answer to the first count in said petition says, he did not speak or publish the supposed false and slanderous words of or concerning plaintiff, or either of them, as charged in said first count of said petition; nor did he mean by any thing he said of or concerning plaintiff that he had been guilty of the crime of perjury. Defendant further answers and says that he did not speak or publish the false and slanderous words of and concerning the plaintiff in the second count of said petition specified as therein plaintiff has alleged, or any or either of them; nor did he mean by any thing he did say that plaintiff had been guilty of perjury.

" Defendant further answers and says plaintiff ought not to have or maintain said action against him, because he says that at the time in said petition mentioned when the plaintiff made the supposed oath, affidavit before said county court of Dallas county, he, the said plaintiff, then and there made oath and stated before said county court that no other person except said Tinsley had any claim on said forty acres of land mentioned in said petition, whereas, in truth and in fact, defendant then and long before that time had a claim on said forty acres of land, whereof plaintiff was then well aware, which is the same affidavit and oath mentioned in both counts of said petition, and not other or different. And defendant says that plaintiff did swear and testify in said affidavit and oath falsely, knowingly, wilfully and corruptly, in manner aforesaid; and so defendant says it is true, as stated in the first count of said petition, that plaintiff had sworn falsely in

manner aforesaid; and that it is true, as stated in said second count in said petition, that plaintiff had sworn falsely in manner aforesaid; all of which he is ready to verify."

It is deemed unnecessary to set forth the facts in evidence.

*Hendrick, Johnson & Ballou,* for plaintiff in error.

I. The petition is insufficient. The demurrer should have been sustained. It does not show that the oath in respect to which the words were spoken was taken in a case wherein perjury could be committed. The petition does not show that the oath was taken before a competent tribunal. The words spoken are not actionable. (See Sess. Acts, 1855, p. 479.) The evidence in respect to swamp lands was required to be taken before the clerk in vacation, and not before the court. If taken before the court it could not be perjury. The county court was not the tribunal to hear the evidence of Tinsley's right to enter the land. (See Vaughn v. Havens, 8 Johns. 109; 2 Johns. 10.) The evidence offered to sustain the plea of justification ought to have been admitted. The instructions asked by defendant should have been given. The instructions given were erroneous.

*Freeman,* for defendant in error.

I. The demurrer was properly overruled. The court committed no error in giving or refusing instructions. The county court had power under the act of 1855 to hear testimony on applications to enter swamp lands.

SCOTT, Judge, delivered the opinion of the court.

The object of the present practice act was to introduce truth and simplicity in pleadings. The act requires that the pleadings should be verified by affidavit. This requirement must necessarily exclude inconsistent answers. As an answer in justification of a charge for slander must admit the speaking of the slanderous words, the defendant can not deny and justify the speaking of words at the same time. To be satisfied of this, it would seem only to be necessary to place

the two answers in juxtaposition.   Under the old system the speaking of the slanderous words might be denied in one plea and justified in another, but that can not now be permitted. What were consistent or inconsistent pleas under the old practice, where the pleadings were not required to be verified, is a very different question from what are consistent or inconsistent answers under the practice now prevailing, where all the pleadings are required to be sworn to.   The statute allows different consistent defences to be separately stated in the same answer.   (R. C. 1855, art. 6, § 14.)   In New York, whence our practice act comes, there is a diversity of opinion in the courts on this question.   The weight of reason is with those who hold that the answers are inconsistent; and it is observable that those who maintain that the two answers may be made, are silent as to the requirement of a verification of the pleadings.   The general issue is now abolished, and a defendant under it can not show that the words were not maliciously spoken, or did not amount to slander. But where the words are of such a character, he may in such a case state the circumstances under which they were spoken in order to show the want of malice, and in that way may defend the action.   Mitigating circumstances serve only to reduce the damages ; they can not therefore constitute a defence to the action ; and whenever they are set up it must be in connection with an answer to the action, and the pleader should state that they are in mitigation of damages, as otherwise, not amounting to an answer, the court would be warranted in striking them out, as not knowing for what purpose they were intended.

The parties can not expect to obtain an advantage by evasive pleading.   If the pleading is insufficient, it ought to be disposed of before going into trial.   A defendant can not put in an answer insufficient as a justification, and expect to treat it as such when it suits his purpose, and then be permitted to deny it when it is his interest to do so.   An answer merely stating that the words spoken are true is insufficient as a justification ; it should state the facts which go to con-

stitute the crime or offence imputed, so that an issue of either law or fact may be framed. An answer justifying the speaking of the words must confess the speaking. (Voorhies' Prac. 206.) Indeed the failure or neglect of the inferior courts to comply with the plain requirements of the statute renders it almost impossible to do any thing with the practice act now in force. Each party moves on confident of success, and it is not until his case is lost that he awakes to the great irregularities of the pleadings. The law requires that, when the allegations or denials of a pleading are so indefinite or uncertain that the precise nature of the charge or denial is not apparent, and when they fail in any other respect to conform to the requirements of the law, the court may require the pleading to be made certain and definite and otherwise to conform to the law by amendment. (R. C. 1855, p. 12, 36, art. 6, § 31.)

This case seems to fall within the principle of those in which it has been held that in an action for slander, where the declaration averred that the plaintiff was foresworn without showing how, it was determined that this defect was aided by a plea of justification which alleged that the plaintiff had taken a false oath at the sessions. (Drake v. Cordery, Cro. Cas. 288; Chitty's Plead. 671.) This principle, it seems, is still applicable under the present practice. (Ayres v. Covill, 18 Barb. 260.)

Errors were committed pending the trial, which will make it necessary to reverse this judgment. In whatever light the pleadings are viewed the difficulty presents itself. If the case is considered as standing on the answer in justification, then all evidence offered in proof of the answer was excluded by the court, an error that can not be surmounted. We may not understand the bill of exceptions, for, without any hesitancy, it may be pronounced one of the worst prepared papers that was ever presented; and if those obtaining judgments will suffer the judge to sign such papers, they must take the consequences. The bill of exceptions, as it appears to us, does furnish evidence conducing to show the truth of

the slander. If we read it correctly, it seems that the land entered by Tinsley did not corner with the lands he held by preëmption; that the one was three quarters of a mile from the other. Why did the court set aside the order allowing Tinsley to enter the land? There was evidence that Atteberry knew that another claimed the land.

In the case of Berry v. Dryden, 7 Mo. 324, the court said "the slander proved must substantially correspond with that charged in the declaration." In the first instruction given by the court at the instance of the plaintiff, the jury is told that "if the defendant spoke and published the slanderous words mentioned in the first count in the petition, or spoke or published the same *in substance*, intending thereby," &c. These words "in substance" were objectionable by themselves without further explanation. The language this or any other court may use in expressing its opinions is not always appropriate in an instruction to the jury. Opinions are usually addressed to and intended for the scientific. If the court saw proper to use the words "substantially" or "in substance" in speaking of the proof of the slander charged, it should have gone further, and stated, as was done in Berry v. Dryden, what idea the law attached to those words in connection with that subject. There is no phrase more likely to mislead a jury than to tell them that if the slanderous words are "in substance" proved the action is sustained. The ordinary acceptation of the words is widely variant from the sense in which they are used by the courts in speaking of the proof of the slanderous words charged in a petition.

Reversed and remanded.