CHILDS, Respondent, v. EMERSON, Appellant.

St. Louis Court of Appeals, March 27, 1906.

1. **SALES: Express Warranty.** In the sale of a chattel it is not necessary to use the word "warranty" in order to constitute a warranty for chattels sold; any representation or positive affirmation of the quality and condition of the thing sold and made with the intention of being relied on and not as a mere expression of opinion, is an express warranty.

2. ——: ——: **Description.** Where the seller of a jack by letter to the purchaser pending the treaty, described its height, weight, appearance and qualities and the purchaser relied upon such statements, the statements amounted to an express warranty and the purchaser could recover damages by showing the animal was not as stated.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*W. O. Gray* for appellant.

*R. L. Motley* and *J. D. Hostetter* for respondent.

(1) Appellant's sole contention and only point made by him on which he relies for a reversal, is that there was no specific warranty in the sale of the jack. He cites no authority whatever in support of his conten-

tion. It has been repeatedly held that the word "warrant" need not be used. In the case at bar, it was sufficient, if the language used by appellant imported an undertaking on his part that the jack was what he represented it to be, or an equivalent to such undertaking. Carter v. Black, 46 Mo. 384; Anthony v. Potts, 63 Mo. App. 517; Graff v. Foster, 67 Mo. 512. (2) The appellant intended for the respondent to rely on his representations, made in letter dated December 8, 1901, in purchasing a jack, and the testimony shows that respondent did rely on such representations, and such representations therefore amount to an express warranty. Danforth v. Crookshanks, 68 Mo. App. 311; Long Bros. v. The J. K. Armsby Co., 43 Mo. App. 253; Voss v. McGuire, 18 Mo. App. 477.

STATEMENT.—The suit is on an alleged breach of warranty in the sale of a jack. Plaintiff, a resident of the State of Washington, being desirous of purchasing a fine jack for breeding purposes, and having the name and address of the defendant as an importer and breeder of such animals, wrote to him about December 1, 1901, a letter of inquiry relative to his prospective purchase, and in reply to this letter the defendant wrote plaintiff December 8th as follows:

"Bowling Green, Mo., Dec. 8, 1901.

"Mr. W. O. Childs,

"Hesseltine, Wash.

"My dear Sir:—Your favor 4th inst. received. I will say I am glad to hear from you. I would be glad to get my fine big imported mammoth jacks introduced into your country. I will sell you one of my best big 15 1-2 hand jacks, weight 1000 pounds. I will sell you a first-class good jack cheap. My jacks are all jet black with white points, 15 to 16 hands high. I am the largest dealer in fine mammonth jacks in the world. You trust to my honesty to select you a good jack and I will guarantee you will get what you want. I have a fine big 5-

year-old jack that has proved himself a grand breeder, sure foal getter, I will sell you for $800; he is 15 1-2 hand high, large, smooth flat bone, long tapering ears, stands up like a fine coach horse, price, $800; his moneys worth is $1200 to $1500. I ship by express, will guarantee the charges won't exceed ($50) fifty dollars.

"I will guarantee safe arrival. I will gauarantee this jack will get you 65 or 75 head of colts the first year if you will breed him to 90 or 100 good mares. The colts sired by him sold here this fall for from 60 to 75 per head. Mules are scarce and high in this country. The English government has left $10,000,000 ten million dollars in this country in last two or three years. Let me sell you a half doz. good jacks you can get the mares. Nothing will pay better than raising mules; they are one of the mainstays of the world the w. over "see."

"I can sell you good jack for $400. I can sell you a better one for $600. I will sell you one of the best jacks for $800. The jack I have selected and will hold him until I hear from you, if you will please answer on receipt of this letter.

"Send me draft to the people's Saving Bank, Bowling Greene, Mo., Pike Co., and instruct them to turn said draft over to me when I give them the express receipts showing that I have shipped jack to you, and prepaid express charges. Please ans.

(Signed.)　　　　　　　　　LUKE M. EMERSON.

"I have on hand at present 100 head of fine first-class jacks and jennets to select you one from.

(Signed.)　　　　　　　　　　　　　L. M. E."

After the receipt of this letter, about December 25th of the same year, the plaintiff answered saying to defendant that he wanted "the best jack according to (his) letter, the imported mammoth jack, 5 year old, 15 1-2 hand high, weighing 1000 pounds, with large smooth flat bones with white points, standing up like a fine coach horse, with long tapering ears, at the price of $800 mentioned;"

117 App.—43

that he was holding his wheat crop and could not pay it all cash down, but would pay $400 cash and give defendant his note for $400, due one year after date with interest. In response to this letter defendant wrote plaintiff as follows:

"Bowling Green, Mo., Jan. 1, 1902.
"W. O. Childs, Esq.,
     "Hesseltine, Wash.
"Dear Sir:—

Your favor 25th to hand. I note what you say, you say you will put $400 cash in jack and gave first-class paper for bal. I will accept your offer. Send same to Peoples Saving Bank, Bowling Green, Mo. What bank do you do business with in Wilburn?

"I note what you say about your fine land, 400 and 623 acres. It looks like big fortune to me. I think it will make you rich in a few years. A good jack will make you and your neighborhood more money than anything, sure. Mules are what you must have. Just as soon as I hear from you I will ship the grand fine jack I have selected for you. I know you will be well pleased with him. You could not do any better if you were here yourself. Hoping we will get the deal through all right, I remain,

LUKE M. EMERSON."

Plaintiff forwarded the $400 and the note which was approved, and defendant shipped to him by express a jack which upon arrival at its destination instead of weighing 1.000 pounds, weighed only 665 pounds; instead of being 15 1-2 hand high, was only 13 hands and one inch in height; instead of having large smooth flat bones, it had only medium bones. It was injured in its rear legs and did not "stand up like a fine coach horse." The jack is mentioned by plaintiff's witness as resembling a "jack rabbit" and that "his ears were the biggest thing about him." He proved not to be a sure foal getter, and instead of getting 65 to 75 colts by 90 to 100 mares,

the result did not exceed 50 per cent. His value was shown to be from $300.000 to $400.00 instead of $1200.00 to $1500.00 as represented.

The plaintiff declined to receive the animal upon his arrival and caused his attorney to so notify defendant, but as defendant neither answered the letter nor made any move towards reclaiming the jack, plaintiff finally, after several months waiting upon him, took the animal into his possession, and in the meantime his note having passed into the hands of a third party, paid the same and instituted this suit on the warranty. The case was tried by a jury under instructions from the court properly submitting the issues. The verdict was for the plaintiff in the sum of $408. 67, on which the court entered judgment and the defendant appealed.

NORTONI, J. (after stating the facts.) —The instructions given by the learned trial court are not criticised on this appeal. The only argument advanced in this court for a reversal of the judgment is that the court refused a peremptory instruction to the effect that there was no evidence of a warranty in the case on which respondent could recover. This argument is no doubt predicated upon the theory that the letter of appellant did not contain express words of warranty. It is well settled that the word "warranty" is not essential, nor is any other particular phraseology necessary to constitute a warranty in cases of this kind. "It is sufficient if there be a representation of the state of the thing sold, or a direct, positive, unequivocal, and express affirmation of its quality and condition, being part of the consideration of the sale, and showing an intention to warrant or make good the quality of the thing sold, and so understood and relied upon, instead of a mere recommendation or expression of an opinion leaving the buyer to understand that he must still examine and judge for himself." [Carter v. Black, 46 Mo. 384; Anthony v. Potts, 63 Mo. App. 517; Graff v. Foster, 67 Mo. 512.]

Benjamin in his work on Sales, vol. 2, (3 Ed.), sec. 817, says: "No special form of words is necessary to create a warranty. It is nearly two hundred years since Lord HOLT first settled the rule, in Cross v. Gardner and Medina v. Stoughton, which BULLER J., in 1789, laid down in opinion given by him in the famous leading case of Pasley v. Freeman, as follows: 'It was rightly held by HOLT, C. J., and has been uniformily adopted ever since, that on affirmation at the time of a sale is a warranty, provided it appears in evidence to have been so intended.'" [Cross v. Garnet, 3 Mod. 261; Medina v. Stoughton, 1 Lord Raym. 593; Pasley v. Freeman, 3 Durnford & East 51.]

The point of distinction being as to whether the representations during the treaty of sale are direct and positive affirmations as a matter of fact, or whether they are the mere expressions of opinion. It is always after all, a matter of contract between the parties and the decisive question is the real intention as to whether the affirmation of fact was made for the purpose of inducing the purchase in the one instance and whether it was relied upon by the purchaser in the other. [Samuels v. Guin's Est., 49 Mo. App. 8; Anthony v. Potts, 63 Mo. App. 517; 2 Benjamin on Sales (3 Ed.), sec. 817; Pasley v. Freeman, 3 Durnford & East 51; Carter v. Black, 46 Mo. 384.]

Let us examine the facts under the light of this rule. In appellant's proposal to sell the jack, he says: "My jacks are all jet black with white points 15 to 16 hands high . . . you trust to my honesty to select you a good jack and I will guarantee you will get what you want. I have a fine big five-year-old jack that has proved himself a grand breeder, sure foal getter, I will sell you for $800; he is 15 1-2 hands high, large smooth flat bone, long tapering ears, stands up like a fine coach horse; price $800. His moneys worth is $1200.00 to $1500.00."

These are direct, positive and unequivocal affirma-

tions of fact, made by the seller in possession of the animal during the treaty of sale to a person in a foreign State who had no means of knowledge other than the representations contained in the letter. It is clear that they were made for the purpose of inducing the purchase. That they were relied upon and induced the purchase is beyond question, for the respondent's reply shows that he described the identical animal depicted to him in appellant's letter, and proposed to purchase the same at the price named, provided the terms of $400 cash and $400 note was satisfactory. The proposition was accepted by appellant, and upon his notification to the respondent to that effect the contract of purchase was thereby closed, and the positive affirmation of fact mentioned entered, as was manifestly intended by the parties, into its consideration and became of the very vitals of the contract itself. Under these conditions it amounts to an express warranty, that the jack was as represented. For it is elementary that a warranty is express "where the seller makes some positive representations or affirmation with respect to the article to be sold pending the treaty of sale, upon which it is intended that the buyer shall rely in making his purchase." [Biddle on Warranties for the Sale of Chattels; Danforth & Co. v. Croockshanks, 68 Mo. App. 311; Voss v. McGuire, 18 Mo. App. 477; Long Bros. v. J. K. Armsby Co., 43 Mo. App. 253.]

For it is well settled as said by Lord ABINGER in Chanter v. Hopkins, 4 M. & R. 399, "that it is an utter fallacy, when an article is described, to say that it is anything but a warranty or a condition precedent that it should be an article of that kind, and that another article might be substituted for it. As he said, if you contract to sell peas, you cannot oblige the party to take beans." [2 Benjamin on Sales (3 Ed.), sec. 773.]

It has been frequently determined by the courts of this State that a sale by description imparts a warranty that the property sold is of that description. [Mur-

phy v. Gay, 37 Mo. 535; Long Bros. v. J. K. Armsby, 43 Mo. App. 253; Voss v. McGuire, 18 Mo. App. 477; Graff v. Foster, 67 Mo. 512.]

As to whether or not appellant's affirmations amounted to an undertaking of warranty was a question of fact for the jury, which was properly submitted by the court, and the verdict is abundantly supported by the evidence.

The judgment is clearly for the right party and it will be affirmed and it is so ordered.