## WERTHEIMER-SWARTS SHOE COMPANY, Respondent, v. E. W. McDONALD, Appellant.

### Springfield Court of Appeals, November 2, 1909.

1. **PLEADING: Sufficiency of Answer Pleading Breach of Warranty in Sale of Personalty.** An answer that contained allegations to the effect that the traveling salesman for plaintiff represented and warranted that the shoes sold were of first-class quality, made of good leather, were well put together, would wear well, that a warranty of quality went with every shoe; that said shoes were as good or better than shoes of similar style and price sold by another manufacturer, whose shoes were well and favorably known in the community where defendant had his store; and further allegations that defendant was induced by said statements to purchase, and that the shoes shipped failed to come up to these representations and warranties, was held to state a breach of warranty, and a good defense to action for purchase price of articles sued for.

2. ———: Answer: **Effect of General Denial and Pleas of Confession and Avoidance.** The answer, in this case, contains a general denial together with defenses of confession and avoidance. Its fault was held not to be that the counts do not state a defense, but that the defenses stated are inconsistent with each other; that in such a case the entire answer cannot be stricken out, as the plea of general denial is waived or overcome by the subsequent pleas.

3. ———: ———: **When Motion to Make Definite and Certain is Proper.** An answer cannot be attacked under our practice act by a motion to strike it out, giving as a reason that the "pretended representation and warranties, therein stated, are too indefinite and uncertain." The proper practice in such case, would be a motion to make the pleading more definite and certain.

4. ——— : ———: **Motion to Strike Out.** The motion to strike out an answer on the grounds "that the counts therein constitute no defense to plaintiff's cause of action as stated in the petition," in its legal effect is a demurrer, and such motions are governed by the rules which govern demurrers.

5. ——— : ———: **Effect of Motion for Judgment and Demurrer Distinguished.** A motion for judgment on the pleadings partakes of the nature of a demurrer, in that it admits all facts that are well pleaded, and if sustained, judgment goes at once. In this, it differs from a demurrer. If the demurrer is sustained, the order is not a final judgment; the party has a right to plead over.

6. ——— : ———: **Proper Method of Testing Sufficiency of Special Pleas.** When an answer consists of a general denial and special pleas, and the latter do not in terms admit facts sufficient to entitle plaintiff to a judgment, a demurrer to the whole answer will not lie. The proper method of testing the sufficiency of the special pleas is to demur to them only or to move to strike them out.

7. **SALES: Express Warranty of Chattels.** A statement by a seller of chattels that his goods are equal in quality to other well known articles similar in kind is an express warranty. An affirmation at the time of a sale is a warranty, provided it was made for the purpose of inducing the purchase and was relied upon by the purchaser.

Appeal from the Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*J. T. White* and *R. H. Davis* for appellant.

(1) In the sale of a chattel, any representation or positive affirmation of quality and condition of the thing sold, and made with the intention of being relied on, is an express warranty, for breach of which an action will lie. Childs v. Emerson, 117 Mo. App. 1 c. 675; Haines v. Neece, 116 Mo. App. l. c. 510; Young v. Vannatta, 113 Mo. App. l. c. 558; Danforth v. Crookshanks, 68 Mo. App. l. c. 316; Carter v. Black, 46 Mo. l. c. 385. (2) A statement by the seller of chattels that his goods were equal in quality to other well known articles sim-

ilar in kind, was an express warranty. Strauss v. American Chewing Gum Co., 134 Mo. l. c. 114; 30 Amer. and Eng. Ency. of Law (2 Ed.), page 138 and note 2; Murphy v. Gay, 37 Mo. 535. (3) The purchaser of a chattel with a warranty, express or implied, when sued for the purchase price, may offer to return the chattel or he may retain the chattel and plead a partial or a total want of consideration, if there has been a breach of the warranty. Birdsall Co. v. Keys, 99 Mo. App. l. c. 463; Steel & Wire Co. v. Symons, 110 Mo. App. l. c. 47; Evans v. Dugan, 81 Mo. App. 60; Fairbanks, Morse & Co. v. Basket, 98 Mo. App. l. c. 63; June & Co. v. Falkinburg, 89 Mo. App. l. c. 571; Atkins Bros. Co. v. Grain Co., 119 Mo. App. l. c. 125; Aultman & Co. v. Hunter, 82 Mo. App. 632. (4) The purchaser may diminish the contract price by the difference between the price and the actual market value of the imperfect article. Miles v. Withers, 76 Mo. App. l. c. 91; Becker v. Crescent Belting & Packing Co., 101 Mo. App. 429; 30 Am. and Eng. Ency. Law, p. 184; Warner v. O'Brien, 40 Mo. App. 483; Evans v. Dugan Cut Stone Co., 81 Mo. App. 60; Branson v. Turner, 77 Mo. l. c. 494; Graff v. Foster, 67 Mo. l. c. 521. (5) The agreement set up in the first count of the answer is a good defense to the plaintiff's action. Wahlert v. Wiseberg, 70 Mo. App. 368; Freidman & Sons v. Kelly, 126 Mo. App. 279; Campbell v. Tinker, 118 S. W. 660.

*O. R. Puckett* for respondent.

A party cannot traverse and at the same time confess and avoid the same allegations. State ex inf. v. Delmar Jockey Club, 200 Mo. l. c. 65; Price v. Mining Co., 83 Mo. App. l. c. 474; Bank of Monett v. Stone & Prickett, 93 Mo. App. l. c. 294. (2) An affirmation as to the value of a thing is deemed a mere opinion. It states no express warranty. It is not sufficiently explicit. 30 Amer. and Eng. Ency. Law, p. 129; Carter v. Black, 46 Mo. 384; Bishop on Contracts, sec. 666. (3)

Antecedent representations made by the vendor as an inducement to the buyer, but not forming a part of the contract, are not warranties. Benjamin on Sales (1888), sec. 610, p. 563; Benjamin on Sales, American Note, secs. 610, 673, p. 606.

NIXON, P. J.—The petition in this case (omitting caption and signatures) is as follows:

"Plaintiff states that it is and at all times hereinafter mentioned was a corporation duly organized and existing under and by virtue of the laws of the State of Missouri.

"That defendant is justly and truly indebted to the plaintiff in the sum of two hundred and sixty-four dollars ($264.00), being the reasonable and agreed price of goods, wares and merchandise sold and delivered by said plaintiff to the defendant during the month of May, 1907, at his special instance and request, full particulars of which will appear in the account herewith filed and marked 'Exhibit A.'

"That the annexed itemized account is just, true and correct and the same is due and remains payable; that all just and lawful offsets, payments and credits have been thereon allowed and that there is now unpaid and owing on said account, after allowing all just credits, deductions and offsets, the said sum of two hundred and sixty-four dollars, which accrued and became payable October 1, 1907.

"Wherefore plaintiff prays judgment against defendant for the sum of $264.00 with interest thereon at the legal rate of six per cent., from the first day of October, 1907, for costs herein to be taxed and all proper relief."

"Exhibit A," attached to the foregoing petition, is an itemized account of the goods alleged to have been purchased by the defendant.

To the petition, the defendant filed the following amended answer:

1.

"Comes now the defendant and for amended answer to plaintiff's petition denies each and every allegation in said petition contained, and further answering this defendant says that on or about the —— day of——, 1907, defendant gave a verbal order to J. W. Sheppard, traveling salesman for plaintiff, for a bill of shoes amounting in price to $360.00, which shoes were to be shipped to defendant by plaintiff and the bill therefor was, by the terms of the agreement of purchase, to be dated July 1, 1907, and due in ninety days thereafter; that Sheppard representing the plaintiff, in order to induce the defendant to make such order and purchase such shoes, on behalf of the plaintiff, represented, warranted and stated to the defendant that the shoes handled by him for plaintiff and sold by plaintiff, and the shoes to be shipped to defendant on such order were of first-class quality, made of good leather for the style and price, were well put together, would wear well, that a guaranty of good quality went with every shoe to be delivered on the order, that the shoes were as good as or better than the shoes of the same and similar style and price sold by the Hamilton-Brown Shoe Company, whose shoes were well and favorably known in the community where defendant had his store, and as good as or better than other shoes of the same style and price sold in that community; and said Sheppard on behalf of the plaintiff, at said time, further agreed as part of the contract of sale that plaintiff would warrant all of the shoes shipped on said order to be as above represented and in order to introduce the line of shoes mentioned in the order into that community, the plaintiff would at the next trip of the said Sheppard, which was to be about six months from the date above mentioned, take up all the shoes ordered and received by the defendant from the plaintiff and remaining unsold, provided the said shoes were not as above warranted, or were not of the quality as above represented

by said Sheppard, or were not such as to give satisfaction to defendant and defendant's customers.

"Defendant further says that he relied upon said statements, warranties and agreements and was induced thereby to give the order as above stated, and paid plaintiff one hundred dollars on account thereof, but that the plaintiff did not ship to the defendant shoes of the kind or quality ordered, but did ship a bill of shoes similar in number, size and price, which shoes so shipped and delivered to the defendant were of inferior quality, made of poor and rotten leather, or imitation leather, were not well put together, but would tear and rip and go to pieces with ordinary wear of a few hours, and at most a few days, were not as good as the shoes of similar price and style sold in that community by Hamilton-Brown Shoe Company, but were in fact worthless and unmerchantable.

"Defendant further says that neither said traveling salesman nor anyone else representing plaintiff came to defendant's place of business in about six months, or at any other time; that defendant on discovering the kind and quality of the shoes shipped to him as aforesaid, notified the plaintiff and offered to return to plaintiff all the shoes shipped to him as aforesaid and remaining unsold, and plaintiff refused to accept the same; that defendant now has on hand ready to deliver to the plaintiff a quantity of shoes shipped to him as aforesaid, amounting in price, by the invoice thereof, to two hundred and sixty-eight dollars, and is ready and willing at all times to deliver same to the plaintiff.

2.

"Defendant for further answer and defense herein says that on or about the —— day ———, 1907, defendant gave a verbal order to J. W. Sheppard, traveling salesman for plaintiff, for a bill of shoes amounting in price to $360.00, which shoes were to be shipped to de-

fendant by plaintiff and the bill therefor was, by the terms of the agreement to purchase, to be dated July 1, 1907, and due in ninety days thereafter; that said Sheppard, who was agent and traveling salesman for plaintiff, in order to induce the defendant to make such order and purchase such shoes, on behalf of plaintiff, represented, warranted and stated to the defendant that the shoes handled by him for plaintiff, and sold by plaintiff, and the shoes to be shipped to defendant on such order, were of first-class quality, made of good leather for the style and price, were well put together, would wear well, that a warranty of quality went with every shoe to be delivered on the order, that said shoes were as good as or better than the shoes of the same and similar style and price sold by the Hamilton-Brown Shoe Company, whose shoes were well and favorably known in the community where the defendant had his store, and as good as or better than other shoes of the same style and price sold in that community.

"Defendant further says that he relied upon said statements, warranties and agreements, and was induced thereby to give the order as above stated, but that plaintiff did not ship to the defendant shoes of the kind or quality ordered, but did ship to the defendant a bill of shoes similar in number, size and price; which shoes so shipped and delivered to the defendant by the plaintiff were of inferior quality, made of poor and rotten leather, or imitation leather, and were not well put together, but would tear and rip and go to pieces with ordinary wear of a few hours and at most a few days, were not as good as the shoes of a similar price and style sold in that community by Hamilton-Brown Shoe Company, but were in fact worthless and unmerchantable.

"Wherefore defendant says that by reason of the premises there has been a failure of the consideration for the account sued on, and that defendant owes plaintiff nothing by reason thereof, and asks to be discharged with its costs.

### 3.

"Defendant further answering and for further defense herein says that on the —— day of ———, 1907, he agreed to purchase of the plaintiff a certain bill of shoes, the style and numbers of which, and the price of which, are given in the itemized statement attached to plaintiff's petition and marked "Exhibit A," for the price and sum of $360.00; that plaintiff shipped to defendant an invoice of shoes amounting to the said sum of $360.00 of the same style, numbers and sizes as mentioned in said "Exhibit A," but that said shoes so shipped as aforesaid and received by defendant were made of poor and rotten leather, or imitation leather, and were not well put together, but would tear and rip and go to pieces with ordinary wear of a few days, and were in fact worthless and unmerchantable.

"Wherefore defendant says that by reason of the premises the consideration for the account sued on has wholly failed, and defendant asks to be discharged with his costs.

### 4.

"Defendant for further answer and counter claim says that he, in the month of ———, 1907, ordered from plaintiff a bill of shoes amounting to $360.00 in price, as set forth in the first paragraph of this answer, and at the same time and as a part of the same transaction, defendant ordered of and from the plaintiff another bill of shoes, to be shipped to defendant at an earlier date than the order first above mentioned, which other order was for shoes amounting to $150.00, which said sum defendant paid to plaintiff; that plaintiff accordingly shipped to defendant before the shipment of the larger order, to-wit, in the month of ———, 1907, shoes amounting in price to $150.00; that when the defendant ordered the said last mentioned bill of shoes, the plaintiff represented, stated and warranted the shoes to be

shipped in pursuance to the order were of the best quality, made of good leather for the style and price, would wear well, were as good as or better in quality than the shoes of similar style and price sold in the community of defendant's store by the Hamilton-Brown Shoe Company; that defendant relied upon said statements and warranties and was induced thereby to make said order and said payment; that in truth and in fact, the shoes shipped as aforesaid were of inferior quality, were made of poor leather, were not well put together, were not as good in quality as shoes of similar style and price sold by Hamilton-Brown Shoe Company in the community of defendant's store; that said shoes would rip, tear and wear out with a few hours of ordinary use and wear and were and are in fact worthless and unmerchantable.

"Wherefore defendant says he has been damaged in the sum of $150.00, for which he prays judgment.

5.

"Defendant for another and further counter claim herein says that on or about the —— day of ——, 1907, he gave a verbal order to plaintiff for a bill of shoes amounting in price to $360.00, the styles, numbers and prices of which are stated in the itemized statement attached to plaintiff's petition and marked "Exhibit A;" that plaintiff warranted, represented and stated to defendant that the shoes ordered of plaintiff and to be shipped to defendant under said order, were of first-class quality, made of good leather for the style and price, were well sewed and well put together, and would wear well; that the shoes shipped by plaintiff and received by defendant were of inferior quality, made of poor and rotten leather, or imitation leather, were not sewed and well put together, but would tear and rip and go to pieces with ordinary wear of a few days and were in fact worthless and unmerchantable.

"Defendant further says that in making said contract of purchase he relied upon the representation,

warranties and agreements, so made as aforesaid, and that he paid to plaintiff on said order the sum of $100.00 before he discovered the worthless and unmerchantable condition of said shoes.

"Wherefore defendant says that by reason of the premises he has been damaged in the sum of $100.00, for which he prays judgment."

That thereafter, the plaintiff filed a motion to strike out the amended answer of the defendant, which motion is as follows:

"Comes now the plaintiff and moves the court to strike out each and every count in defendant's amended answer, viz., one, two, three, four and five, for the reason that the facts as stated in each and every one of said counts constitutes no defense to plaintiff's cause of action as stated in the petition herein. And because the pretended representations and warranties therein stated are too indefinite and uncertain, in fact amounts to no warranty whatever."

Upon hearing, this motion was by the trial court sustained, and the defendant refusing to plead further, judgment was entered for the plaintiff in the sum of $262.00, the amount sued for, and costs.

The defendant in due time and mode perfected his appeal. The question presented to this Court is as to the propriety of the trial court's action in sustaining the above motion, striking out the defendant's amended answer, and in entering judgment for the plaintiff.

This question is one solely as to the law under the rules of pleading and practice in our State. The most cursory examination of the answer in this case shows, first, a general denial of each and every allegation in the petition, and following the general denial, five other separate defenses are attempted to be set out by the pleader in his answer. In effect, and logically, all the special pleas, considered together, confess the plaintiff's cause of action and then attempt to set up warranties growing

out of the sale of the goods mentioned in plaintiff's petition. These warranties, the pleader alleges, were broken by the plaintiff, which he claims should entitle him either to defeat the action in toto or reduce the amount of plaintiff's recovery.

By section 605 of the Revised Statutes of 1899, it is provided:

"Sec. 605.— . . . The defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both. They must each be separately stated in such manner that they may be intelligibly distinguished, or refer to the cause of action on which they are intended to answer."

These several causes of defense—number one to number five inclusive—set out in this answer, grew out of the plaintiff's cause of action if its statements are to be accepted. They are separately stated and in such a manner that they may be intelligibly distinguished.

The motion of the plaintiff, upon which the trial court struck out the entire answer and entered judgment for the plaintiff, sets out two reasons which are intended to show why it should be granted, and why each and every count in the defendant's answer, namely, one, two, three, four and five, should be stricken out. One of these grounds is, "because the pretended representations and warranties therein stated are too indefinite and uncertain." As to this objection—that the answer is indefinite and uncertain—it is sufficient to say that if the fact were true as stated, it could not be reached under our practice act by a motion to strike out, but the proper practice would be by motion to make the pleading more definite and certain. [MacAdam v. Scudder, 127 Mo. 345; State ex rel. v. Edmundson et al., 71 Mo. App. 172, and cases therein cited.] The other reason for striking out the entire answer is that the counts constituted no defense to the plaintiff's action. It is enough to say in reply that on the very face of the record there stands a

general denial, which, if well pleaded, and without further answer, would certainly constitute an absolute and complete defense to the plaintiff's petition. This legal proposition is primer law and no authorities are needed to support it.

The real fault with the answer, if any, is not that its counts do not state a defense, but that the defenses stated are inconsistent with each other. The section of the statute cited does not limit the number of defenses that may be pleaded, but, as construed by the courts, it does inhibit inconsistent defenses. That the general denial and the plea of warranty in this case are inconsistent is patent on the face of the answer. The pleading first denies the allegations of the petition; it then confesses and seeks to avoid them by setting up warranties. There is no question but that such an answer is in violation of the common law rules of pleading and is flatly at variance with our code regulations on the subject. As a question of pleading, the law in this State has been long established that a party cannot traverse and at the same time confess and avoid the same allegations; that such a pleading is subject to the objection that it is inconsistent with itself and also open to the charge of duplicity. The decisions supporting these propositions are abundant. We cite Coble v. McDaniel, 33 Mo. 363; Darrett v. Donnelly, 38 Mo. 492; Adams v. Trigg, 37 Mo. 141; Atteberry v. Powell, 29 Mo. 429; McCord v. Railroad, 21 Mo. App. 1. c. 95. In the case of State ex inf. v. Delmar Jockey Club, 200 Mo. 1. c. 66, all these cases are considered.

But it does not necessarily follow that plaintiff's motion to strike out the entire answer should have been sustained and judgment given for the plaintiff on the pleadings because the answer was defective. Such a rule would certainly be a travesty on justice and would be a violation of every legal principle which seeks by rules of pleading and practice to arrive at the true substance of things, and not be drawn into a judicial chase

after false shadows. The law is otherwise. The plea of general denial is simply waived when it is followed by special pleas as in this case. [Price v. Mining Co., 83 Mo. App. l. c. 474; Bank of Monett v. Stone & Prickett, 93 Mo. App. l. c. 294.] As stated by SMITH, P. J., in the Price case, supra: "It is a rule of pleading that a general denial is overcome by a subsequent confession and attempted avoidance," citing McCord v. Railroad, 21 Mo. App. 95.

In most of the cases just cited, the question was raised after trial. The motion to strike out in this case, in its legal effect, was a demurrer, and such motions are governed by the rules which govern demurrers. [Sappington v. Jeffries, 15 Mo. 628; Cashman v. Anderson, 26 Mo. 67.] A motion for judgment on the pleadings partakes of the nature of a demurrer in that it admits all facts that are well pleaded, and if sustained, judgment goes at once. In this it differs from a demurrer. If the demurrer is sustained, the order is not a final judgment; the party has a right to plead over. [Sternberg v. Levy, 159 Mo. 617.] The motion, like the demurrer, raises an issue of law only. [State ex rel. v. Higgins, 84 Mo. App. 531; State ex rel. v. Simmons Hardware Co., 109 Mo. 118.]

The only case in our State to which our attention has been called where a motion to dismiss before trial was considered, is that of State ex rel. v. Rogers, 79 Mo. 283. This case seems to be nearly parallel to the case under consideration. In that case, the answer contained several defenses consisting of a general denial followed by special defenses. The plaintiff demurred to the whole of the answer on the ground that the same constituted no defense to the action. The demurrer was sustained and judgment rendered on the petition for want of further answer as in this case. The Supreme Court there held that, where the answer consists of a general denial and special pleas, and the latter do not in terms admit facts sufficient to entitle plaintiff to a

judgment, a demurrer to the whole answer will not lie. The proper method of testing the sufficiency of the special pleas is to demur to them only or to move to strike them out. This case seems never to have been overruled or criticised, and in the light of the latest decisions of the Supreme Court, points out the true rule of practice in such cases, and accords with the liberal principles of the modern law of pleading and practice.

The general denial in this case having, as we have seen, in law been waived by the special pleas, we are brought finally to a consideration of their sufficiency. We take the following quotation from the defendant's answer (count No. 2), as an example of his manner of pleading the warranty.

"That said Sheppard, who was agent and traveling salesman for plaintiff" (at the time of the sale) "in order to induce the defendant to make such order and purchase such shoes, on behalf of plaintiff, represented, warranted and stated to the defendant that the shoes handled by him for the plaintiff, and sold by plaintiff, and the shoes to be shipped to defendant on such order, were of first-class quality, made of good leather for the style and price, were well put together, would wear well, that a warranty of quality went with every shoe to be delivered on the order, that said shoes were as good as or better than the shoes of the same and similar style and price sold by the Hamilton-Brown Shoe Company, whose shoes were well and favorably known in the community where the defendant had his store, and as good as or better than other shoes of the same style and price sold in that community.

"Defendant further says that he relied upon such statements, warranties and agreements, and was induced thereby to give the order as above stated, but that plaintiff did not ship to the defendant shoes of the kind or quality ordered, but did ship to the defendant a bill of shoes similar in number, size and price, which shoes so shipped and delivered to the defendant by the plain-

tiff were of inferior quality, made of poor and rotten leather, or imitation leather, and were not well put together, but would rip and tear and go to pieces with ordinary wear of a few hours, and at most a few days, were not as good as the shoes of similar price and style sold in that community by Hamilton-Brown Shoe Company, but were in fact worthless and unmerchantable."

If this does not state a cause of action on a breach of warranty, it gives countenance to appellant's assertion, "then the English language is incapable of expressing a cause of action." That the sale of a chattel with any representation or positive affirmation of its quality and condition, made with the intention of being relied upon and in fact relied upon, is an express warranty for the breach of which an action will lie, has long been the law in English speaking communities. No special form of words is necessary to create a warranty. It is now more than two hundred years since Lord Holt first settled the rule, in Cross v. Gardner and Medina v. Stoughton, which BUTLER, J., in 1789 laid down in an opinion given by him in the famous leading case of Pasley v. Freeman, as follows: "It was rightly held by HOLT, C. J., and has been uniformly adopted ever since, that an affirmation at the time of a sale is a warranty, provided it appears in evidence to have been so intended." It is a matter of contract between the parties and the decisive question is the real intention as to whether the affirmation of fact was made for the purpose of inducing the purchase in the one instance and whether it was relied upon by the purchaser in the other. [Childs v. Emerson, 117 Mo. App. 671; Haines v. Neece, 116 Mo. App. 499; Young v. Van Natta, 113 Mo. App. 550; Danforth v. Crookshanks, 68 Mo. App. 311; Carter v. Black, 46 Mo. l. c. 385.] A statement by the seller of chattels that his goods are equal in quality to other well known articles similar in kind, is an express warranty. [Strauss v. American Chewing Gum Co., 134 Mo. App. l. c. 114; Murphy v. Gay, 37 Mo. 535; 30 Am. and Eng.

Ency. of Law (2nd ·Ed.), page 138.]    The authorities already cited could be increased to an extent only limited by the time and ·diligence of the compiler.

Under these principles, the case must be reversed and remanded, which is accordingly done.    All concur.